1

2  I. Scott Bogatz                          Roberto J. Kampfner
3  Nevada Bar No. 3367                      California State Bar No. 179026
   BOGATZ & ASSOCIATES, P.C.                WHITE & CASE LLP
4  3455 Cliff Shadows Parkway, Suite 110    633 West Fifth Street, Suite 1900
   Las Vegas, NV 89129                      Los Angeles, CA  90071
5  Telephone:  (702) 776-7000               Telephone:  (213) 620-7700
   Facsimile:  (702) 776-7800               Facsimile:   (213) 452-2329
6  Email: sbogatz@isbnv.com                 Email: rkampfner@whitecase.com

7  Counsel for Debtor and Debtor-in-Possession,   Counsel for Southwest Desert Equities, the
8  C-SWDE348, LLC                                 parent of the Debtor

9

10              **UNITED STATES BANKRUPTCY COURT**

11                    **DISTRICT OF NEVADA**

12

13  In re:                          )   Case No.
                                    )
14                                  )   Chapter 11
                                    )
15  C-SWDE348, LLC, a Nevada limited liability  )
    company,                        )
16                                  )   **DISCLOSURE STATEMENT FOR**
            Debtor and Debtor-in-Possession.)   **DEBTOR'S AMENDED PLAN OF**
17                                  )   **REORGANIZATION DATED DECEMBER**
                                    )   **1, 2010**
18                                  )
                                    )
19                                  )
                                    )
20  _____)

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN
OF REORGANIZATION DATED DECEMBER 1, 2010

LOSANGELES 885312 v2

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................................... 1

II.   EXPLANATION OF CHAPTER 11 ........................................................................ 3
      A.    Overview of Chapter 11 ................................................................................ 3
      B.    Plan of Reorganization ................................................................................. 3
      C.    Confirmation of a Plan of Reorganization ................................................... 4

III.  DEFINITIONS ......................................................................................................... 6

IV.   SUMMARY OF THE PLAN AND DISTRIBUTIONS UNDER THE PLAN ......... 6
      A.    Summary of Plan ........................................................................................... 6
      B.    Distributions under the Plan ....................................................................... 12

V.    VOTING INSTRUCTIONS ................................................................................... 13

VI.   BACKGROUND AND EVENTS PRECIPITATING THE CHAPTER 11 FILING ............ 14

VII.  THE PLAN ............................................................................................................. 16
      A.    Treatment of Unclassified Claims Under the Plan ..................................... 16
      B.    Summary of Classification and Treatment of Claims Under the Plan ........ 17
      C.    Implementation of the Plan ......................................................................... 18

VIII. CONDITIONS PRECEDENT .................................................................................. 24
      A.    Condition to Confirmation ........................................................................... 24
      B.    Conditions to Effectiveness ......................................................................... 24
      C.    Waiver of Conditions ................................................................................... 24
      D.    Failure of Conditions ................................................................................... 25

IX.   DISPUTED CLAIMS ............................................................................................. 25
      A.    Objection Deadline ...................................................................................... 25
      B.    Prosecution of Disputed Claims ................................................................. 25
      C.    Entitlement to Plan Distributions upon Allowance .................................... 25

X.    EFFECT OF CONFIRMATION ............................................................................. 25
      A.    Revesting of Assets ...................................................................................... 25
      B.    Discharge ..................................................................................................... 26

XI.   JURISDICTION ..................................................................................................... 26

XII.  AMENDMENT AND WITHDRAWAL OF PLAN ................................................ 26
      A.    Amendment of the Plan ............................................................................... 26
      B.    Revocation or Withdrawal of the Plan ........................................................ 27

**TABLE OF CONTENTS**
(continued)

| | | | Page |
|---|---|---|---|
| XIII. | TAX CONSEQUENCES OF THE PLAN | | 27 |
| XIV. | RISK FACTORS | | 27 |
| XV. | LIQUIDATION ANALYSIS | | 29 |
| XVI. | ACCEPTANCE AND CONFIRMATION OF THE PLAN | | 30 |
| | A. | Acceptance of the Plan | 30 |
| | B. | Confirmation | 31 |
| XVII. | MISCELLANEOUS PROVISIONS | | 32 |
| | A. | Filing Objections to Claims | 32 |
| | B. | Holding of, and Failure to Claim, Undeliverable Distributions | 32 |
| | C. | Fractional Amounts | 33 |
| | D. | Ex Parte Relief | 33 |
| | E. | Binding Effect | 33 |
| | F. | Exculpation | 33 |
| | G. | Governing Law | 34 |
| | H. | Modification of Payment Terms | 34 |
| | I. | United States Trustee Fees | 34 |
| | J. | Computation of Time | 34 |
| | K. | Final Decree | 34 |
| XVIII. | RECOMMENDATION AND CONCLUSION | | 35 |

# I.    **INTRODUCTION**

This Disclosure Statement (the "Disclosure Statement") has been prepared by the above-captioned debtor (the "Debtor"), in connection with the solicitation of acceptances of the Debtor's Plan of Reorganization Dated December 1, 2010 (the "Plan").  The purpose of this Disclosure Statement is to provide adequate information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the Debtor and the condition of the Debtor's books and records, that would enable a hypothetical reasonable investor, typical of holders of Claims and equity interests, to make an informed judgment about the Plan.  An acceptance or rejection of the Plan must be in writing and may only be made by completing the ballot that accompanies the Plan.

In order for your vote to be counted, it must be *received* no later than 5:00 p.m. (prevailing Pacific Time) on January 14, 2011 at the following address:

Bogatz & Associates, P.C.
c/o Rikki Poll
3455 Cliff Shadows Parkway, Suite #110
Las Vegas, NV 89129

The Debtor reserves the right, but not the obligation, to extend the voting deadline and to count any votes received thereafter.

This Disclosure Statement includes (among other things), a summary of the Chapter 11 Case, a description of the Claims against and equity interests in the Debtor, a summary of the Plan, a discussion of the Plan's feasibility, and a liquidation analysis setting forth what holders of a Claim against or equity interest in the Debtor would recover if the Debtor was liquidated immediately under Chapter 7 of the Bankruptcy Code.

**UPON BANKRUPTCY COURT APPROVAL OF THE PLAN, THE PLAN WILL BE BINDING UPON ALL CREDITORS AND HOLDERS OF EQUITY INTERESTS.**

The Debtor requests that you vote promptly for the Plan upon carefully reviewing the Plan.

If you have any questions concerning the procedures for voting, or any questions concerning your treatment under the Plan, please contact Amanda Stewart of Focus Property Group at (702) 242-4949.

THE PLAN IS THE GOVERNING DOCUMENT. IF ANY INCONSISTENCY EXISTS BETWEEN THE PLAN AND THE DISCLOSURE STATEMENT, THE TERMS OF THE PLAN CONTROL.

THE FINANCIAL PROJECTIONS CONTAINED IN THIS DISCLOSURE STATEMENT REPRESENT THE DEBTOR'S ESTIMATES OF FUTURE EVENTS BASED ON CERTAIN ASSUMPTIONS MORE FULLY DESCRIBED BELOW, SOME OR ALL OF WHICH MAY NOT BE REALIZED. THE FINANCIAL INFORMATION IS UNAUDITED. NONE OF THE FINANCIAL ANALYSIS CONTAINED IN THIS DISCLOSURE STATEMENT IS CONSIDERED TO BE A "FORECAST" OR "PROJECTION" AS TECHNICALLY DEFINED BY THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS. THE USE OF THE WORDS "FORECAST," "PROJECT," OR "PROJECTION" WITHIN THE DISCLOSURE STATEMENT RELATES TO THE BROAD EXPECTATIONS OF FUTURE EVENTS OR MARKET CONDITIONS AND QUANTIFICATIONS OF THE POTENTIAL RESULTS UNDER THOSE CONDITIONS.

THE PROFESSIONALS REPRESENTING THE DEBTOR HAVE RELIED UPON INFORMATION PROVIDED BY THE DEBTOR IN CONNECTION WITH THE PREPARATION OF THIS DISCLOSURE STATEMENT AND HAVE NOT INDEPENDENTLY VERIFIED ALL OF THE INFORMATION CONTAINED HEREIN. THE CONTENTS OF THIS DISCLOSURE STATEMENT SHOULD NOT BE CONSTRUED AS LEGAL, BUSINESS, OR TAX ADVICE. YOU SHOULD CONSULT WITH YOUR OWN LEGAL COUNSEL AND ACCOUNTANT AS TO LEGAL, TAX, AND RELATED MATTERS CONCERNING YOUR CLAIM OR INTEREST.

EACH CREDITOR AND EQUITY INTEREST HOLDER IS URGED TO REVIEW THE PLAN IN FULL BEFORE VOTING ON THE PLAN TO ENSURE A COMPLETE UNDERSTANDING OF THE PLAN AND THIS DISCLOSURE STATEMENT.

THIS DISCLOSURE STATEMENT IS INTENDED FOR THE SOLE USE OF CREDITORS AND OTHER PARTIES IN INTEREST AND FOR THE SOLE PURPOSE OF ASSISTING THEM IN MAKING AN INFORMED DECISION ABOUT THE PLAN. NO

LOS ANGELES 885312 v2

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN
OF REORGANIZATION DATED DECEMBER 1, 2010

PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS IN CONJUNCTION WITH THE SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT OR IN THE BALLOTS.  IF GIVEN OR MADE, ANY SUCH INFORMATION OR REPRESENTATIONS MUST NOT BE RELIED UPON AS HAVING BEEN AUTHORIZED BY THE DEBTOR.

## II.    EXPLANATION OF CHAPTER 11

### A.    Overview of Chapter 11

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code.  Pursuant to chapter 11, a debtor in possession attempts to reorganize its business for the benefit of the debtor, its creditors and other parties in interest.  The Debtor has not yet commenced bankruptcy proceedings.  However, the Debtor expects to file a "prepackaged" bankruptcy after the solicitation of votes on the Plan is completed if all of the Classes of creditors set forth below approve the Plan.

The commencement of a chapter 11 case creates an estate comprising all the legal and equitable interests of the debtor as of the date the petition is filed.  Sections 1101, 1107, and 1108 of the Bankruptcy Code provide that a debtor may continue to operate its business and remain in possession of its property as a "debtor in possession" unless the bankruptcy court orders the appointment of a trustee.  Here, the Debtor fully expects to remain in possession of its assets throughout its Chapter 11 Case.

The filing of a chapter 11 petition triggers the automatic stay provisions of the Bankruptcy Code.  Section 362 of the Bankruptcy Code provides, among other things, for an automatic stay of all attempts to collect or recover prepetition claims from the debtor or to otherwise interfere with, or exercise control over, the debtor's property or business.  Except as otherwise ordered by the Bankruptcy Court, the automatic stay remains in full force and effect until the effective date of a confirmed plan of reorganization.

### B.    Plan of Reorganization

The formulation of a plan of reorganization is the principal purpose of a chapter 11 case.  The plan sets forth the means for satisfying claims against and interests in the debtor.  **In this case, the**

Debtor is soliciting its Plan prior to commencing its bankruptcy proceeding. **In such a case, section 1125 of the Bankruptcy Code requires that a debtor comply with applicable non-bankruptcy law in connection with its solicitation of the Plan. If no applicable non-bankruptcy law exists, section 1126(b) provides that a solicitation must comply with the disclosure requirements set forth in section 1125 of the Bankruptcy Code concerning disclosure statements. The Debtor does not believe that there is an applicable non-bankruptcy law governing the solicitation of this Plan. Accordingly, this Disclosure Statement is presented to holders of Claims against the Debtor to satisfy the requirements of section 1125 of the Bankruptcy Code in connection with the Debtor's solicitation of votes on the Plan.** In short, the Debtor believes that this Disclosure Statement provides information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the Debtor and the condition of the Debtor's books and records, that would enable a hypothetical investor to make an informed judgment about the Plan.

The Debtor expects to file the Plan concurrently with the commencement of its bankruptcy case and your vote on the Plan will be binding, even after the Debtor's bankruptcy case has been commenced.

### C.    Confirmation of a Plan of Reorganization

If all classes of claims and interests accept a plan of reorganization, the bankruptcy court may confirm the plan if the bankruptcy court independently determines that the requirements of section 1129 of the Bankruptcy Code have been satisfied. Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a plan and, among other things, requires that a plan meet the "best interests" of creditors test and be "feasible." The "best interests" test generally requires that the value of the consideration to be distributed under a plan to the holders of claims or interests in the debtor is not less than those parties would receive if the debtor were liquidated pursuant to a hypothetical liquidation occurring under chapter 7 of the Bankruptcy Code. Under the "feasibility" requirement, the court generally must find that there is a reasonable probability that the debtor will be able to meet its obligations under its plan without the need for further financial reorganization. **With the exception of approval of the Plan by all impaired classes, the Debtor believes that the**

-4-

**Plan satisfies all of the applicable requirements of section 1129(a) of the Bankruptcy Code, including, in particular, the best interests of creditors test and the feasibility requirement.**

Chapter 11 does not require that each holder of a claim or interest in a particular class vote in favor of a plan of reorganization in order for the bankruptcy court to determine that the class has accepted the plan. Rather, a particular class will be determined to have accepted the plan if the court determines that the plan has been accepted by a majority in number and two-thirds in amount of those claims actually voting in such class. **Importantly, only the holders of Claims who actually vote will be counted as either accepting or rejecting the Plan.**

In addition, classes of claims or interests in the debtor that are not "impaired" under a plan of reorganization are conclusively presumed to have accepted the plan and thus are not entitled to vote. Conversely, classes that are to receive no distribution under the plan are conclusively deemed to have rejected the plan. Accordingly, acceptances of a plan will generally be solicited only from those persons who hold claims or equity interests in an impaired class. A class is "impaired" if the legal, equitable, or contractual rights associated with the claims or equity interests of that class are modified in any way under the plan. Modification for purposes of determining impairment, however, does not include curing defaults and reinstating maturity or payment in full in cash on the effective date of the plan.

The bankruptcy court may also confirm a plan of reorganization even though fewer than all classes of impaired claims and equity interests accept it. For a plan of reorganization to be confirmed despite its rejection by a class of impaired claims or equity interests, the proponent of the plan must show, among other things, that the plan does not "discriminate unfairly" and that the plan is "fair and equitable" with respect to each impaired class of claims or equity interests that has not accepted the plan.

Under section 1129(b) of the Bankruptcy Code, a plan is "fair and equitable" as to a rejecting class of claims or equity interests if, among other things, the plan provides: (a) with respect to secured claims, that each such holder will receive or retain on account of its claim property that has a value, as of the effective date of the plan, in an amount equal to the allowed amount of such claim or such other treatment as accepted by the holder of such claim; and (b) with respect to unsecured

claims and equity interests, that the holder of any claim or equity interest that is junior to the claims or equity interests of such class will not receive or retain on account of such junior claim or equity interest any property at all unless the senior class is paid in full.

A plan does not "discriminate unfairly" against a rejecting class of claims or equity interests if (a) the relative value of the recovery of such class under the plan does not differ materially from that of any class (or classes) of similarly situated claims or equity interests, and (b) no senior class of claims or equity interests is to receive more than 100% of the amount of the claims or equity interests in such class. **The Debtor believes that the Plan has been structured so that it will satisfy the foregoing requirements as to any rejecting Class of equity interests, and can therefore be confirmed, if necessary, over the objection of such of Class. The Debtor will not attempt to confirm the Plan over the non-acceptance of any creditor Class.**

### III.    DEFINITIONS

All capitalized terms used herein, but not defined herein shall have the meaning given to such terms in the Plan. If a term is not defined herein or in the Plan, but is defined in the Bankruptcy Code, such term has the meaning given to that term in the Bankruptcy Code unless the context of the Disclosure Statement requires otherwise. References to a code section are references to the Bankruptcy Code, except as otherwise stated.

### IV.    SUMMARY OF THE PLAN AND DISTRIBUTIONS UNDER THE PLAN

This Section provides a summary of the Plan and of how Claims against and equity interests in the Debtor are classified and treated under the Plan. The descriptions set forth below are merely summaries and, in the event of an inconsistency with the Plan, the terms of the Plan will govern. Please refer to Section VII hereof for a more detailed discussion of the Plan.

#### A.    Summary of Plan

The Plan is not complicated. The Debtor is the owner of certain real property totaling 44.52 acres located in what is to be the Lantana Trails Master Plan in Las Vegas, Nevada (the "Property"). The Property serves as collateral for a promissory note (the "Note") in the amount of $11,575,000 issued by the Debtor's parent for the benefit of the lenders named therein (the "Lenders"). Under the Plan, the Property will be returned to the Lenders in full satisfaction of the Note and in lieu of

-6-

foreclosure. Such return will occur by cancelling the equity interests in the Debtor currently held by the Debtor's parent (the "Parent") and issuing "Class A Membership Interests" in the reorganized Debtor to the Lenders on a pro rata basis. In exchange for the cancellation of its common equity, the Parent will receive "Class B Membership Interests" in the Debtor, which will permit the Parent to receive only limited distributions from the Debtor, as described in more detail below. The Parent, as the holder of the Class B Membership Interests, will have no voting rights other than with regard to the dissolution of the reorganized Debtor as permitted by the New Operating Agreement. The purpose of the Plan is to effectively transfer ownership of the Property to the Lenders without the necessity and expense of a foreclosure as well as to provide a structure and mechanism to protect and improve and fully realize the value of the Property for the Lenders.

After the effective date of the Plan (the "Effective Date"), the Debtor will be governed by a new operating agreement (the "New Operating Agreement"), which has been attached as an exhibit to the Plan. *Please note that what follows is a summary of some of the important points of the New Operating Agreement and is not intended to supersede any of the terms thereof. In the event of a conflict between this Disclosure Statement, the Plan and the New Operating Agreement, the terms of the New Operating Agreement shall govern. We urge you to read the New Operating Agreement before voting for the Plan.*

Under the terms of the New Operating Agreement, the management of the new limited liability companies will be vested in a "Steering Committee" and a "Manager." The Steering Committee shall be initially comprised of five (5) individuals, four (4) of which shall be elected by the Lenders and one (1) of which such shall be elected by the Manager. A list of the initial members of the Steering Committee will be filed with the Bankruptcy Court and served upon the Lenders prior to the commencement of any confirmation hearing with respect to the Plan. The Steering Committee's main function is to (a) approve an annual project budget and any amendments thereto which require additional capital contributions and (b) approve the annual business plan of the Debtor and any material modifications thereof. Further, the Steering Committee must approve any action of the Manager that would cause the reorganized Debtor to be materially out of compliance with an approved budget.

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN
OF REORGANIZATION DATED DECEMBER 1, 2010

The day-to-day management of the reorganized Debtor shall be the responsibility of the Manger. Further, the Manager of the Debtor shall be an affiliate of LST Investments, LLC, a Nevada limited liability company dba Clayton Mortgage and Investment ("Clayton"). Clayton is not affiliated with or related to the Debtor or the Parent, and is currently the servicer of the Note. The Manager will be paid an annual "Management Fee" by the Debtor equal to 0.5% of the original principal amount of the Note to manage the reorganized Debtor. In addition to the Management Fee, prior to the Petition Date, the Parent has reimbursed Clayton for some of its out-of-pocket legal and other professional fees incurred in connection with the restructuring of the Note. Pre-petition, certain affiliates of Parent who were borrowers under various loans (including the Note) serviced by Clayton commenced litigation in the Eighth Judicial District Court, Clark County, Nevada, case no. A-10-609073-C (the "Litigation") whereby the borrowers were seeking, among other things, information relating to the identity and contact information of the Lenders, which Clayton disputed. Recognizing the costs and risks of litigation, the parties thereto negotiated a settlement pursuant to which the parties agreed to negotiate proposed plans of reorganization to restructure each of the loans and generally release each other from various claims. Additionally, the Parent and certain affiliates agreed to reimburse Clayton for its expenses and compensate it for servicing the various loans pre-petition. Furthermore, to compensate Clayton for its efforts in assisting with the restructuring of the Note through the Plan, the Parent will pay Clayton $28,938 on the Effective Date.

Notwithstanding any of the foregoing, there are certain "Major Decisions" that the reorganized Debtor cannot make without the consent of 65% of the holders of the Class A Membership Interests with respect to which votes are cast (i.e., the membership interests to be held by the Lenders). A comprehensive list of Major Decisions is set forth in Section 3.7(b) of the New Operating Agreement and includes, without limitation, (a) the sale of any Property, except where such sale is for fair market value (as determined by an MAI certified appraiser) and will result in the return of all capital invested by the Class A Members after the Effective Date and all accrued interest thereon, (b) any financing, refinancing or acquiring of material indebtedness by the company that exceed 10% of the original principal amount of the Note, (c) the acquisition of any asset by the

reorganized Debtor with a value in excess of $50,000, (d) any change in the nature of the principal business of the reorganized Debtor and (e) the issuance of additional membership interests in the Debtor or the creation of additional classes of membership interests.

The operations of the reorganized Debtor shall be funded by voluntary capital contributions (each an "Additional Member Contributions") from the holders of Class A Membership Interests on a pro rata basis on the terms and conditions set forth in the New Operating Agreement. Among other things, Additional Member Contributions shall be requested by the Manager in accordance with the Debtor's Steering Committee approved budget (as the same may be amended from time to time). Additional Member Contributions shall bear interest of 8% per annum until returned.

In the event that a Class A Member fails to fund its pro rata share of a requested Additional Member Contribution, the remaining Class A Members shall be entitled to contribute the difference to the Debtor (a "Supplemental Capital Contribution") in an amount equal to their ratable share of the Class A Members prepared to contribute such Supplemental Capital Contribution. Supplemental Capital Contributions shall bear interest at a rate of 20% per annum until returned, which consists of an 8% return plus a 12% premium. If the Supplemental Capital Contribution provided by the Class A Members is insufficient to cover the shortfall, the Class B Members shall be entitled to contribute the remaining shortfall.

The New Operating Agreement also requires the Parent, as the Class B member, to perform certain obligations. Among other things, the Parent is required to contribute $136,027 as a "Class B Member Upfront Payment." The Class B Member Upfront Payment is in an amount reasonably determined by the Class B Member and the Manger to pay certain costs relating to the Property from October 31, 2009 through the end of the 2011 calendar year and to reimburse Clayton and certain Lenders for some of the costs relating to the Property and the enforcement of the Note and the related loan documents. Specifically, the Class B Member Upfront Payment shall be used by the Debtor to pay the following: real property taxes attributable to the Property for the period of October 31, 2009 through December 31, 2011, management fees (due under the New Operating Agreement) from May 1, 2010 through December 2011, and fees and expenses previously incurred by Clayton in connection with the enforcement of the Note and related loan documents.

-9-

If the amount of the carry costs associated with the Debtor for the period from the Effective Date through the end of the 2011 calendar year exceeds the amount of the Class B Member Upfront Payment allocated to the payment of such carry costs, then the difference shall be funded through additional capital contributions to be made by Class A members.

A portion of the Class B Member Upfront Payment in the amount of $76,056 shall be deemed to constitute the "Class B Member Initial Capital Contribution" and shall be returned as set forth below. The remainder of the Class B Member Upfront Payment will not be deemed a capital contribution or loan by the Parent to the Debtor and shall not be reimbursed to the Parent.

In addition, after conformation of the Plan, the Parent, as Class B member, shall also be required to aid the Manager in formulating the initial annual budget and business plan for the Debtor, and thereafter annually proposing modifications to the Debtor's budget and business plan were appropriate, as well as using its best efforts to maintain the Property in good condition and repair and in compliance with all applicable laws, rules, permits, regulations, zoning conditions and entitlements. The Debtor must maintain its water rights in order to maximize the value of the Property, and the Parent has the expertise to preserve and maintain such rights in an efficient and cost-effective manner. If the Parent fails to perform its obligations to the Debtor, it could lose the Class B Member Interest as more particularly set forth in the New Operating Agreement.

Upon the sale of Property or other distribution of cash from Debtor operations, the net proceeds shall be paid:

- first to the makers of Supplemental Capital Contributions in an amount equal to all unreturned Supplemental Capital Contributions together with simple interest at a rate of 8% per annum until all such unreturned Supplemental Capital Contributions (together with accrued interest) shall have been returned in full;

- second, ratably, in proportion to the amount then due, to the makers of Additional Member Contributions and the Parent in the amount of all unreturned Additional Member Contributions and the unreturned Class B Member Initial Contribution together with simple interest of 8% per annum until all unreturned Additional Member Contributions and the Class B Member Initial Contribution are returned in full;

- third, until the holders of Class A Membership Interests have received an amount equal to the Waterfall Increase Amount (as defined below), (a) 90% to the holders of Class A Membership Interests on a pro rata basis; provided that the pro rata distributions of the Class A members shall be adjusted so that the makers of Supplemental Capital Contributions receive an additional 12% annual return at the

LOS ANGELES 885312 v2

expense of the Class A members whose failure to make Additional Member Contributions necessitated the making of Supplemental Capital Contributions, and (b) 10% to the Parent; and

• fourth, 70% to the holders of Class A Membership Interests on a pro rata basis and 30% to the Parent.

The term "Waterfall Increase Amount" means an amount equal to the sum of the original principal amount of the Note and an annual assessment equal to 1% of such amount, prorated monthly, from the Effective Date through the date of the sale of the Property.

The Class A Membership Interests shall be subject to certain restrictions on transfer set forth in the New Operating Agreement. Among other things, the Class A Membership Interests will not be registered or publically traded and can only be transferred in compliance with securities laws. Further, the Class A Membership Interests are subject to rights of first refusal in favor of existing holders of Class A Membership Interests and the Manager may refuse to admit a new member to the Debtor if it believes that doing so would not be in the best interests of the Debtor.

The Debtor may, but is not required, to hire an affiliate of the Parent to serve as the real estate broker in connection with a sale of the Property under an industry standard brokerage and commission agreement. If the Debtor does not hire the affiliate of the Parent, however, the affiliate of the Parent (which is a licensed commercial real estate broker) shall retain a non-exclusive right to market the Property as part of a proposed master plan development or other property assemblage and, if it is the procuring cause of the sale, will be paid an industry standard commission as a share of the commission otherwise to be paid to the listing broker (if any) and other participating brokers (if any).

*Finally, the Plan contains a release of Claims against the Guarantor under the Guarantee (the "Guarantor Claims") by all Lenders voting in favor of the Plan. As a result, a Lender's vote in favor of the Plan also constitutes a voluntary release by such Lender of all Guarantor Claims. Subject to the next paragraph, all Lenders that do not affirmatively vote in favor of the Plan will retain all of their rights to assert their Guarantor Claims against the Guarantor.*

*Notwithstanding the foregoing, the Note is held by more than one natural person and section 645B.340 of the Nevada Revised Statutes (the "Nevada Statute"), provides, among other things, that, in such cases, persons holding 51% or more of the beneficial interests in a note may*

*be able to bind the remaining holders to a release of any or all of the obligations relating to such note. Here, if Lenders holding more than 51% of the beneficial interests in the Note accept the Plan and release the Guarantor, the Nevada Statute may permit the Debtor and the Guarantor to argue that the releases contained in the Plan are binding upon all of the Lenders, including those that did not accept the Plan. There is no guarantee that 51% of the beneficial interests in the Note will vote in favor of the Plan and, even if that is the case, the Plan does not affect and the Bankruptcy Court will not adjudicate any rights that the Debtor, the Guarantor or the Lenders may have under the Nevada Statute. Accordingly, any determination of whether the Nevada Statute binds Lenders that did not accept the Plan to the releases will be determined, if necessary, in a forum other than the Bankruptcy Court, most likely in a Nevada state court. The substance of any such determination is unclear and cannot be predicted with certainty.*

The Plan is the result of arms' length negotiations between the Debtor, the Parent and Clayton and carefully balances the interests of all parties. Under the Plan, the Lenders will control the Debtor, receive the large bulk of distributions from the sale of the Property and receive the benefits of the Parent's real estate expertise and the Class B Member Upfront Payment. The Parent, on the other hand, will retain the ability to receive small distributions if the Property can be successfully sold.

The alternative to the Plan is for the Lenders to foreclose on the Property. In such event, the Lenders will own the Property as tenants in common and will have no feasible legal structure for maintaining and selling the parcels to third parties. Further, the Lenders will not have the benefit of the Parent's real estate expertise and will not receive any funding from the Parent. Under these circumstances, the Debtor believes that the Plan is in the best interest of the Lenders and urges you to vote for the Plan.

### B.     Distributions under the Plan

The following is a summary of the Distributions under the Plan. Claims (except Administrative Claims and Claims of Professionals) against and equity interests in the Debtor will receive Distributions under the Plan as set forth below:

| Classification | Type of Claim | Treatment |
|---|---|---|
| Class 1 | Property Tax Claims<br><br>**Estimated amount of Property Tax Claims: $0** | On the Effective Date, holders of Allowed Property Tax Claims will receive Cash in the amount of their Allowed Property Tax Claims plus interest at the applicable statutory rate. |
| Class 2 | Note Claims<br><br>**Estimated amount of Note Claims: $11,575,000** | On the Effective Date, each holder of an Allowed Note Claim shall receive, in complete satisfaction of such Claim and all related Liens, its Pro Rata Share of 100% of the Class A Membership Interests. Such membership interests shall have all of the rights and obligations set forth in the New Operating Agreement. |
| Class 3 | Old Membership Units | On the Effective Date and upon the payment of the Class B Member Upfront Payment, the Old Membership Units shall be exchanged for the Class B Membership Interests. Such membership interests shall have all of the rights and obligations set forth in the New Operating Agreement. |

## V.    VOTING INSTRUCTIONS

**IT IS IMPORTANT THAT YOU EXERCISE YOUR RIGHT TO VOTE TO ACCEPT OR REJECT THE PLAN.** If you are or may be entitled to vote on the Plan, you have been sent a ballot (the "Ballot") and instructions for voting with this Disclosure Statement. You should read the Ballot carefully and follow the instructions contained therein. Please use only the Ballot sent to you with this Disclosure Statement.

To simplify the voting procedure, Ballots have been sent only to all known holders of Claims and equity interests, including Disputed Claims to which objections may be filed once the Chapter 11 Case has been commenced. The Bankruptcy Code and the Bankruptcy Rules provide that only the holders of Allowed Claims (or Claims which are deemed Allowed) and holders of Allowed equity interests are entitled to vote on the Plan. The Bankruptcy Court may temporarily allow a Disputed Claim to which an objection has been filed for purposes of voting on the Plan. Therefore, although the holders of Disputed Claims to which an objection has been filed will receive Ballots, these votes will not be counted unless the Bankruptcy Court temporarily allows such Claims for purposes of voting on the Plan.

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF REORGANIZATION DATED DECEMBER 1, 2010

If a party in interest is a member of more than one Class, it will receive a Ballot for each Class. **IF YOU ARE A MEMBER OF MORE THAN ONE CLASS, YOU MUST FILL OUT AND RETURN ALL BALLOTS SENT TO YOU FOR YOUR VOTE TO COUNT IN EACH CLASS.**

**AN ACCEPTANCE OR REJECTION OF THE PLAN MAY BE VOTED BY COMPLETING THE BALLOT THAT ACCOMPANIES THE PLAN AND THE DISCLOSURE STATEMENT, AND RETURNING IT NO LATER THAN 5:00 P.M. (PREVAILING PACIFIC TIME) ON JANUARY 14, 2011 TO:**

Bogatz & Associates, P.C.
c/o Rikki Poll
3455 Cliff Shadows Parkway, Suite #110
Las Vegas, NV 89129

**IF YOUR BALLOT IS NOT RETURNED BY SUCH TIME, IT MAY NOT BE CONSIDERED. BALLOTS WHICH ARE RETURNED BUT NOT PROPERLY EXECUTED OR WHICH FAIL TO INDICATE EITHER ACCEPTANCE OR REJECTION OF THE PLAN WILL NOT BE COUNTED.**

**VI.    BACKGROUND AND EVENTS PRECIPITATING THE CHAPTER 11 FILING**

The Debtor's only asset is the Property. The Property was originally acquired by the Parent of the Debtor. The original loans obtained by the Parent to acquire the Property were later refinanced through the Note, which is attached as <u>Exhibit B</u> to the Plan. The Note is secured by the Property pursuant to a Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (as amended, modified, released or assigned prior to the Petition Date the "<u>Deed of Trust</u>") dated as of March 27, 2006 and recorded in the official records of Clark County, Nevada as Instrument No. 0002928. The Property was acquired as part of a plan to acquire land to develop and entitle a master planned community commonly known as Lantana Trails (the "<u>Community</u>"). Such community is being developed by Focus Investment Group, LLC (the "<u>Developer</u>"), which also owns a majority interest in the Parent

1    In the fall of 2007, the credit markets dramatically tightened. As a result, the Developer and

2    the Parent were unable to obtain the financing required to both continue developing the Community

3    and service the interest on the loans used to acquire the land comprising the Community, including

4    the Note. As a result, in February of 2008, the Parent ceased paying interest on the Note, and,

5    instead, requested that the Lenders agree to a three-year forbearance agreement, pursuant to which

6    the Developer would continue to pay development and carry costs in respect of the Community, but

7    not interest on the Note, which would accrue pending a sale of the Property at the conclusion of the

8    development of the Community.

9    The market for real estate loans has not improved since the forbearance agreement was

10   executed, and, in fact, has become more difficult. As a result, the Developer now believes that it can

11   no longer fund all of the development and carry costs associated with the Property. Accordingly, the

12   Developer and the Parent approached Clayton in 2009 and 2010 and sought to negotiate a new

13   restructuring of the Note. After substantial negotiations, the Developer, the Parent and Clayton

14   agreed to restructure the Note as set forth in the Plan. The Plan is the product of vigorous arms'

15   length negotiations.

16   In short, and as noted above, pursuant to the Plan, the Property will be transferred to the

17   Debtor from the Parent immediately prior to commencing this case and, on the Effective Date, the

18   Lenders will be provided with 100% of the Class A Membership Interests in the Debtor. The Parent

19   (and current holder of the equity in the Debtor) will be issued Class B Membership Interests upon

20   the payment of the Class B Member Upfront Payment. Under the Plan, the Lenders will receive

21   90% of all distributions from the sale of the Property (after repayment of Additional Member

22   Contributions, Supplemental Capital Contributions and the Class B Initial Capital Contribution and a

23   return thereon, as more particularly provided in the New Operating Agreement) until they have

24   received an amount equal to the Waterfall Increase Amount and 70% of all distributions thereafter.

25   The Debtor's new Manager (an entity affiliated with Clayton, the servicer of the Note), with

26   assistance from the Parent and Developer, will continue to develop the Community and entitle the

27   Property, but all costs incurred in connection therewith, including the carrying cost of the Property

28   will be paid by the Debtor through voluntary additional capital contributions made by the Lenders or

otherwise borrowed from third-parties; provided that the Parent shall fund all property tax payments from October 31, 2009 through December 31, 2011.

The Developer, the Parent, the Debtor and Clayton each agree that a prepackaged plan of reorganization is the best method for accomplishing the restructuring of the Property. Most importantly, the parties do not believe that state law provides a mechanism to effectively realize value from the Property. Indeed, under state law, the Lenders would likely foreclose upon the Property, which would leave them holding the Property as tenants in common. Under those circumstances, no legal framework would exist to fund carry costs and marketing expenses and for selling the Property. A prepackaged plan of reorganization solves these structural issues. Further, the Parent has agreed to make the Class B Member Upfront Payment, which it has no obligation to make in the event of a foreclosure. The Developer, the Parent, the Debtor and Clayton urge you to vote in favor of the Plan.

## VII.    THE PLAN

A copy of the Plan accompanies this Disclosure Statement as Exhibit A. The following summary of the material provisions of the Plan is qualified in its entirety by the specific provisions of the Plan, including the Plan's definitions of certain terms used below. The following is intended only to provide a general description of the Plan. For more specific information concerning the Plan, the Plan should be referenced. For an overview of the Plan, please refer to Section IV above.

### A.    Treatment of Unclassified Claims Under the Plan

As provided in Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, including, without limitation, Claims for Professional Fees, are not classified for purposes of voting on, or receiving distributions under, the Plan. Holders of such Claims are not entitled to vote on the Plan. All such Claims are instead treated separately in accordance with Article 2 of the Plan and in accordance with the requirements set forth in Section 1129(a)(9)(A) of the Bankruptcy Code.

### 1.    Administrative Claims

Administrative Claims other than Claims for Professional Fees shall be paid in full in Cash by the reorganized Debtor on the Effective Date, except as otherwise permitted by the Bankruptcy Code or as otherwise agreed by the reorganized Debtor and the holders of any such Administrative

-16-

Claims. All requests for payment of Administrative Claims, other than requests for payment of Claims for Professional Fees, must be filed by the Administrative Claim Bar Date or the holders thereof shall be forever barred from asserting such Administrative Claims against the Debtor or the reorganized Debtor.

### 2. Professional Fees

Each Person seeking an award by the Bankruptcy Court of Professional Fees: (a) must file a final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date within thirty (30) days of the Effective Date; and (b) if the Bankruptcy Court grants such an award, it must be paid in full in Cash by the Debtor with funds contributed by the Parent in such amounts as are allowed by the Bankruptcy Court as soon thereafter as practicable. All final applications for allowance and disbursement of Professional Fees must be in compliance with all of the requirements of the Bankruptcy Code, the Bankruptcy Rules and any applicable guidelines and with all of the terms and conditions set forth in any applicable order of the Bankruptcy Court, including, without limitation, the Confirmation Order, and all other orders governing payment of Professional Fees.

### 3. Post-Effective Date Professional Fees

All Professional Fees for services rendered in connection with the Chapter 11 Case and the Plan after the Effective Date are to be paid by the reorganized Debtor upon receipt of an invoice for such services, or on such other terms to which the reorganized Debtor and the relevant Professional may agree, without the need for further Bankruptcy Court authorization or entry of a Final Order.

### B. Summary of Classification and Treatment of Claims Under the Plan

In accordance with section 1123(a)(1) of the Bankruptcy Code, all Claims of Creditors (except those Claims receiving treatment as set forth in Section VII(A) above) and holders of equity interests are placed in the Classes described below for all purposes, including, without limitation, voting on, Confirmation of, and Distribution under, the Plan:

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN
OF REORGANIZATION DATED DECEMBER 1, 2010

| Class 1 | Property Tax Claims | Unimpaired, deemed to accept |
|---------|---------------------|------------------------------|
| Class 2 | Note Claims | Impaired, entitled to vote |
| Class 3 | Old Membership Units | Impaired, entitled to vote |

The treatment of Claims against and equity interests in the Debtor under the Plan is set forth below and is consistent with the requirements of Section 1129(a) of the Bankruptcy Code.

### 1.    Class 1--Property Tax Claims

Class 1 consists of Property Tax Claims.  Property Tax Claims are unimpaired by the Plan; consequently, the holders of Property Tax Claims are deemed to have accepted the Plan.  On the Effective Date, each holder of an Allowed Property Tax Claim shall receive a single Cash payment equal to the sum of (a) its Allowed Property Tax Claim and (b) all accrued postpetition interest calculated at the rate required by applicable nonbankruptcy law.

### 2.    Class 2--Note Claims

Class 2 consists of the Note Claims.  Note Claims are impaired by the Plan; consequently, the holders of Note Claims are entitled to vote on the Plan.  On the Effective Date, each holder of a Note Claim shall receive, in complete satisfaction of such Claim and any Liens under the Deed of Trust securing such Claim, its Pro Rata Share of 100% of the Class A Membership Interests.  Such Class A Membership Interests shall have all of the rights and obligations set forth in the New Operating Agreement.

### 3.    Class 3 – Old Membership Units

Class 3 consists of the Old Membership Units.  Old Membership Units are impaired by the Plan; consequently, the holders of Old Membership Units are entitled to vote on the Plan.  On the Effective Date, and upon the payment of the Class B Member Upfront Payment, the Old Membership Units shall be exchanged for the Class B Membership Interests.  Such Class B Membership Interests shall have all of the rights and obligations set forth in the New Operating Agreement.

### C.    Implementation of the Plan

The following section describes the means for implementing the Plan.

-18-

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN
OF REORGANIZATION DATED DECEMBER 1, 2010

1.      **Issuance of Class A Membership Interests**.  On the Effective Date, the Old Membership Units shall be cancelled and the Debtor shall issue, without further order of the Bankruptcy Court or need for corporate approval, the Class A Membership Interests and the Class B Membership Interests as provided for in the Plan.

2.      **Adoption of Operating Agreement**.  On and after the Effective Date, and without further order of the Bankruptcy Court or need for corporate approval, the Debtor shall be governed by the New Operating Agreement and such agreement shall supersede all other operating agreements in respect of the Debtor.  The New Operating Agreement shall provide at all times that distributions from the reorganized Debtor to its members, including the holders of Class A Membership Interests and Class B Membership Interests, shall be paid first to the makers of Supplemental Capital Contributions in an amount equal to all unreturned Supplemental Capital Contributions together with simple interest at a rate of 8% per annum until all such unreturned Supplemental Capital Contributions (together with accrued interest) shall have been returned in full, second, ratably, in proportion to the amount then due, to the makers of Additional Member Contributions and the Parent in the amount of all unreturned Additional Member Contributions and unreturned Class B Member Initial Contributions together with simple interest of 8% per annum until all unreturned Additional Member Contributions and the Class B Member Initial Contributions are returned in full, third, until the holders of Class A Membership Interests have received an amount equal to the Waterfall Increase Amount, (a) 90% to the holders of Class A Membership Interests on a pro rata basis; provided that the pro rata distributions of the Class A members shall be adjusted so that the makers of Supplemental Capital Contributions receive an additional 12% annual return at the expense of the Class A members whose failure to make Additional Member Contributions necessitated the making of Supplemental Capital Contributions, and (b) 10% to the Parent, and, fourth, 70% to the holders of Class A Membership Interests on a pro rata basis and 30% to the Parent.

3.      **Management**.  On and after the Effective Date, the Debtor shall be managed as provided in the New Operating Agreement.  Further, without limiting the generality of the

-19-

foregoing, the Manager shall be entitled to receive the Management Fee and all other compensation and reimbursements described in the New Operating Agreement. The entry of the Confirmation Order shall ratify and approve all actions taken by the Debtor prior to the date thereof.

The Manager will be an affiliate of Clayton, the servicer of the Note. Clayton is not an insider of the Debtor, the Parent or the Developer and the Debtor believes that, as Manager, Clayton will have every incentive to act in best interests of the Lenders. Importantly, the New Operating Agreement requires the Parent and the Developer to aid the Manager in formulating budgets and maintaining Property entitlements. The expertise of the Parent and Developer in real estate development matters should permit the Debtor to be managed in a reasonable manner post-Effective Date and, in the Debtor's view, is of considerable value to the Lenders. Further, the Steering Committee, which will be controlled by Lender representatives, will have ultimate say over the approval of budgets and the business plan. Finally the Management Fee, which will be assessed annually in the amount of 0.5% of the original principal amount of the Note, was negotiated at arms' length and, in the Debtor's view, is reasonable under the circumstances.

**4.    Release of Deed of Trust.** On the Effective Date, all Liens granted under the Deed of Trust shall be deemed extinguished and satisfied as of the Effective Date without further order of the Bankruptcy Court. Recordation of the Confirmation Order (or a supplemental order implementing the Plan by evidencing the release of the Deed of Trust) shall be deemed to constitute a full reconveyance of the Deed of Trust without further order of Bankruptcy Court. Without limiting the generality of the foregoing, the entry of the Confirmation Order shall constitute a direction for Clayton, in its capacity as servicer for the Lenders, to deliver the Deed of Trust, along with any reconveyances reasonably requested by the Debtor, to the Debtor to evidence the automatic cancellation and satisfaction of the Deed of Trust as of the Effective Date.

**5.    Certain Tax Provisions.** Pursuant to section 1146(a) of the Bankruptcy Code, the making or delivery of an instrument of transfer as part of a transaction authorized by the Plan, including, without limitation, any transfers of Property shall not be taxed under any law imposing a stamp tax or similar tax.

6. **Issuance of New Membership Units.** Pursuant to section 1145(a) of the Bankruptcy Code, section 5 of the Securities Act of 1933 and any state or local law requiring registration for the offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security shall not apply to the issuance of the Class A Membership Interests and the Class B Membership Interests. *Notwithstanding the foregoing, the Class A Membership Interests and Class B Membership Interests, once issued, shall not be publically traded and may only be transferred on the terms and conditions set forth in the New Operating Agreement.* In addition, pursuant to section 1125(e) of the Bankruptcy Code, any Persons that solicit the acceptance or rejection of the Plan, including, the Parent, the Debtor and the Manager, in good faith and in compliance with the Bankruptcy Code, or that participate, in good faith and in compliance with the applicable provisions of this title, in the offer, issuance, sale or purchase of a security, offered or sold under the Plan, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan or the offer, issuance, sale or purchase of securities.

7. **Post-confirmation matters.**

On and after the Effective Date, without need for further action by the members or managers of the Debtor, and without further order of the Bankruptcy Court, the Debtor shall be appointed estate representative under section 1123 of the Bankruptcy Code and shall be solely responsible for and shall have authority to: (a) make all Distributions required to be made on or after the Effective Date to the holders of Allowed Claims, including Distributions of Class A Membership Interests and Class B Membership Interests; (b) settle, resolve and object to Claims, including Note Claims; (c) retain, employ and utilize such Professionals as may be necessary without further approval of the Bankruptcy Court; and (d) do all things necessary and appropriate to fulfill the duties and obligations of the Debtor under the Plan, the Confirmation Order, the Bankruptcy Code and the Bankruptcy Rules. The Debtor, in its capacity as estate representative, shall comply with all withholding and reporting requirements imposed upon it by any Governmental Unit under applicable law and all Distributions shall be subject to such withholding and reporting requirements, if any.

On and after the Effective Date, and without further order of the Bankruptcy Court, the Parent shall be appointed estate representative under section 1123 of the Bankruptcy Code and shall be solely responsible for and shall have authority to: (a) pay all fees payable under 28 U.S.C. § 1930; (b) file any post-Confirmation reports required by the Bankruptcy Code or the Bankruptcy Court and (c) move for the entry of a Final Decree and prepare and file any pleadings as may be required by the Bankruptcy Court in connection with the Final Decree and the closing of the Chapter 11 Case.

**8.     Release of Claims by Releasing Lenders**. On the Effective Date, each of the Lenders voting in favor of the Plan (each a "Releasing Lender") and Clayton, on behalf of itself and each of its agents, successors, assigns and representatives of any kind (collectively, the "Releasing Lender Parties"), shall and hereby does voluntarily forever release and discharge the Debtor, any other obligors under the Note, the Guarantor, any obligors under any other guarantees of the Note (if any) and each of such Person's respective agents, successors, assigns and representatives of any kind (collectively, the "Debtor Parties") from any and all claims, demands, causes of action and rights of every kind, nature or character arising or existing on or before the Effective Date arising out of or in any way related to the Note, the Guarantee, any other guarantees of the Note or the Property; whether absolute, inchoate or contingent; whether determined or undetermined, known or unknown, proven or unproven; whether held individually, jointly, or jointly and severally; whether arising directly, indirectly, derivatively, or by way of any legal or equitable right of subrogation, contribution, indemnity, estoppel, marshalling of assets or otherwise; whether for compensation, relief, protection, punishment or any other remedy or result of any kind, character or nature; whether based upon any intentional or negligent conduct, strict liability, any tort of any kind, upon any breach of any contract or upon any other grounds or upon any other theory whatsoever; whether asserted or subject to assertion by complaint, cross-complaint, counterclaim, affirmative defense, or other pleading, by motion, by notice or otherwise; whether asserted or subject to assertion in any jurisdiction, in any court or other forum or with any federal, state, county, municipal or other governmental authority, agency or official; and whether arising at law, in equity or otherwise.

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF REORGANIZATION DATED DECEMBER 1, 2010

Lenders that do not vote, or vote against the Plan shall not be considered Releasing Lenders under the Plan; however, the Debtor and the Guarantors reserve all of their rights under the Nevada Statute.

**9.      Release of Claims by Debtor Parties.**  On the Effective Date, each Debtor Party hereby forever releases and discharges each Releasing Lender Party from any and all claims, demands, causes of action and rights of every kind, nature or character arising or existing on or before the Effective Date arising out of or in any way related to the Note, the Guarantee, any other guarantees of the Note (if any) or the Property; whether absolute, inchoate or contingent; whether determined or undetermined, known or unknown, proven or unproven; whether held individually, jointly, or jointly and severally; whether arising directly, indirectly, derivatively, or by way of any legal or equitable right of subrogation, contribution, indemnity, estoppel, marshalling of assets or otherwise; whether for compensation, relief, protection, punishment or any other remedy or result of any kind, character or nature; whether based upon any intentional or negligent conduct, strict liability, any tort of any kind, upon any breach of any contract or upon any other grounds or upon any other theory whatsoever; whether asserted or subject to assertion by complaint, cross-complaint, counterclaim, affirmative defense, or other pleading, by motion, by notice or otherwise; whether asserted or subject to assertion in any jurisdiction, in any court or other forum or with any federal, state, county, municipal or other governmental authority, agency or official; and whether arising at law, in equity or otherwise.

**10.      Corporate Authority.**  The entry of the Confirmation Order shall constitute authorization for the Debtor to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and consummate, the Plan, and the Plan Documents prior to, on and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule, or regulation, including, without limitation, any action required by holders of Old Membership Units, including, among other things, the issuance of Class A Membership Interests and Class B Membership Interests, and the adoption of the New Operating Agreement under the Plan.

**11.    Avoidance Actions**.  The Debtor does not believe that the estate has any viable avoidance actions and, therefore, does not intend to pursue any such actions after the Effective Date.

### VIII.    CONDITIONS PRECEDENT

**A.    Condition to Confirmation**

It is a condition precedent to Confirmation that the Bankruptcy Court enter a Confirmation Order in form and substance reasonably acceptable to the Debtor and Clayton, which shall include a provision that the Real Property shall be held by the Debtor on the Effective Date free and clear of Liens and Claims as provided for in the Plan.

**B.    Conditions to Effectiveness**

The following are conditions precedent to the occurrence of the Effective Date:

(a)    the Confirmation Date shall have occurred;

(b)    the Confirmation Order shall have been entered and shall be a Final Order;

(c)    each of the "Company Conditions" set forth in the New Operating Agreement shall have been satisfied.  Such Company Conditions include, without limitation, a requirement that the Parent pay the Class B Member Upfront Fee to the Debtor prior to the Effective Date;

(d)    no request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code shall have been made, or, if made, remain pending;

(e)    the Debtor shall have received all approvals necessary or appropriate to substantially consummate the Plan; and

(f)    each and every Plan Document shall be fully executed and in form and substance reasonably satisfactory to the Debtor and Clayton.

**C.    Waiver of Conditions**

Conditions to Confirmation and the occurrence of the Effective Date may be waived, in whole or in part, by the Debtor at any time with the consent of Clayton or an order of the Bankruptcy Code.

**D.    Failure of Conditions**

If the Effective Date shall not occur, the Debtor and all other parties in interest shall retain all their rights and remedies as if the Plan had not been proposed.  Among other things, the Plan shall be null and void and nothing contained in the Plan shall: (a) constitute a waiver of any Claims against or equity interests in the Debtor or (b) prejudice in any manner the rights of the Debtor or the Lenders.

**IX.    DISPUTED CLAIMS**

**A.    Objection Deadline**

Any objections to Administrative Claims and all other Claims made after the Effective Date shall be filed and served on the holders of such Administrative Claims and Claims not later than sixty (60) days after the Effective Date or such later date as may be approved by the Bankruptcy Court via ex parte request.

**B.    Prosecution of Disputed Claims**

The Debtor, as estate representative, may object to the allowance of Claims and Administrative Claims filed with the Bankruptcy Court with respect to which liability is disputed in whole or in part.  All objections that are filed and prosecuted as provided herein shall be litigated to Final Order or compromised and settled in accordance with the Plan.

**C.    Entitlement to Plan Distributions upon Allowance**

Notwithstanding any other provision of the Plan, no Distribution shall be made with respect to any Claim to the extent it is a Disputed Claim, unless and until such Disputed Claim becomes an Allowed Claim.  When a Claim that is not an Allowed Claim as of the Effective Date becomes an Allowed Claim (regardless of when), the holder of such Allowed Claim shall thereupon become entitled to receive Distributions in respect of such Claim the same as though such Claim had been an Allowed Claim on the Effective Date.

**X.    EFFECT OF CONFIRMATION**

**A.    Revesting of Assets**

Subject to the provisions of the Plan and the Confirmation Order, the property of the Estate, including, without limitation, the Property, shall vest in the Debtor on the Effective Date.  As of the

Effective Date, all such property, including, without limitation, the Property, shall be free and clear of all Claims, Liens and equity interests, including, without limitation, any claims arising from the Note, any Liens arising from the Deed of Trust and the Old Membership Units to the fullest extent permitted by section 1141(c) of the Bankruptcy Code. From and after the Effective Date, the Debtor shall be free of any restriction imposed by the Bankruptcy Court, the Bankruptcy Code and the Bankruptcy Rules, other than the obligations set forth in the Plan, or the Confirmation Order.

**B.      Discharge**

Except as provided in the Plan or the Confirmation Order, the rights afforded under the Plan and the treatment of Claims and equity interests under the Plan are in exchange for and in complete satisfaction, discharge, and release of, all Claims. Except as provided in the Plan or the Confirmation Order, Confirmation discharges the Debtor and the reorganized Debtor from all Claims or other debts that arose before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not: (a) a proof of claim based on such debt is filed or deemed filed under Section 501 of the Bankruptcy Code; (b) a Claim based on such debt is Allowed under Section 502 of the Bankruptcy Code; or (c) the holder of a Claim based on such debt has accepted the Plan.

## XI.      JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, and as more particularly set forth in the Plan, the Bankruptcy Court shall retain and have all authority and jurisdiction as is allowed under the Bankruptcy Code and other applicable law to enforce the provisions, purposes, and intent of the Plan; provided, that nothing in the Plan or the Confirmation Order shall provide the Bankruptcy Court with any jurisdiction to determine the rights of the Debtor, the Guarantor or any of the Lenders under or in connection with the Nevada Statute.

## XII.      AMENDMENT AND WITHDRAWAL OF PLAN

**A.      Amendment of the Plan**

At any time before the Confirmation Date, the Debtor may alter, amend, or modify the Plan under section 1127(a) of the Bankruptcy Code; provided that the Debtor may not materially modify the treatment of any Class that has accepted the Plan without the consent of such Class. After the

Confirmation Date and before substantial consummation of the Plan as defined in section 1101(2) of the Bankruptcy Code, the Debtor may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission in, or reconcile any inconsistencies in the Plan or the Confirmation Order, and to implement such action as may be necessary to carry out the purposes and effects of the Plan so long as such proceedings do not materially and adversely affect the treatment of holders of Claims under the Plan; provided, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or applicable order of the Bankruptcy Court.

### B. Revocation or Withdrawal of the Plan

The Debtor reserves the right to revoke or withdraw the Plan at any time and for any reason before the Confirmation Date. Without limiting the generality of the foregoing, the Debtor may withdraw the Plan in the event that any Class does not accept the Plan or if there is substantial opposition to the Plan from any Lender notwithstanding such acceptance. If the Plan is withdrawn or revoked, then the Plan shall be deemed null and void, and nothing contained in the Plan or any Plan Documents shall be deemed a waiver of any Claims by or against the Debtor or any other Person in any further proceedings involving the Debtor.

### XIII.  TAX CONSEQUENCES OF THE PLAN

**THE PLAN MAY HAVE SIGNIFICANT TAX CONSEQUENCES FOR ALL CREDITORS AND EQUITY HOLDERS OF THE DEBTOR. ACCORDINGLY, EACH HOLDER OF A CLAIM OR EQUITY INTEREST IS STRONGLY URGED TO CONSULT WITH HIS OR HER TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN.**

**THE DEBTOR AND THE REORGANIZED DEBTOR MAY WITHHOLD ALL AMOUNTS REQUIRED BY LAW TO BE WITHHELD FROM PAYMENTS TO HOLDERS OF ALLOWED CLAIMS.**

### XIV.  RISK FACTORS

The restructuring of the Debtor contemplated by the Plan involves a degree of risk, and this Disclosure Statement contains forward-looking statements that involve risks and uncertainty. The

Debtor's actual results could differ materially from those anticipated in such forward-looking statements as a result of a variety of factors, including those set forth in the following risk factors and elsewhere in this Disclosure Statement. **Holders of Claims and equity interests should consider carefully the following factors, in addition to the other information contained in this Disclosure Statement, before submitting a vote to accept or reject the Plan. The below risk factors should not be regarded as constituting the only risks involved in connection with the Plan and its implementation.**

The Plan contains several material risks, including, without limitation:

- Under the Plan, the Parent has agreed to fund property tax payments in respect of the Property through December 31, 2011. All other carry costs of the Property must be voluntarily borne by the Lenders receiving Class A Membership Interests in the Debtor. If the Lenders are unwilling to contribute sufficient capital to pay such costs, the Debtor, the Manager and the Developer may not be able to effectively market and sell the Property or maintain entitlements. Further, if property taxes accruing after December 31, 2011 are not funded by the Lenders through additional capital contributions, the Property may be lost to foreclosure.

- Major Decisions of the Debtor can be authorized by a vote of 65% of the Class A Membership Interests, including, without limitation, the incurrence of additional indebtedness and the sale of the Property. As a result, the Debtor may make Major Decisions over the objection of an individual Lender.

- Under the New Operating Agreement, the Debtor will be managed by an affiliate of Clayton. Although the Manager must seek approval of all budgets and business plans from the Steering Committee, the Manager otherwise will have wide latitude in managing the Debtor notwithstanding the preferences of the Lenders.

- The New Operating Agreement permits the Steering Committee to authorize the sale of Property without the consent of the holders of Class A Membership Interests if (A) the sale will produce sufficient net proceeds to return all Additional Member Contributions and Supplemental Capital Contributions along with the required return

LOSANGELES 885312 v2

thereon and (B) such sale is for market value as determined by an MAI authorized appraiser. Accordingly, the Property may be sold under those circumstances without the direct consent of the Lenders and over the objection of any individual Lender.

- If the Lenders holding Class A Membership Interests are unwilling to fund the carry costs of the Property, the Debtor may, subject to the terms of the New Operating Agreement, seek financing to pay such costs and may secure such financing with the Property. Thereafter, the lender providing such financing may foreclose upon the Property if the Debtor is unable to meet its debt obligations to such lender.

- There is no guarantee that liquidity in the real estate market in southern Nevada will improve in the future. As a result, the Property may lose value after the Effective Date, impairing the value of the Class A Membership Interests issued to the Lenders under the Plan.

- Although the Developer believes that it can weather the downturn in the real estate market, such an outcome is not guaranteed. If the Developer fails, it will not be able to effectively market the Property and the Property could lose value.

- Under the Plan, the Parent and the Developer are prepared to pay the cost of the plan process only so long as such cost is reasonable. If there are lengthy objections to the Plan, such parties may refuse to continue to fund the Debtor. In such a case, the Plan will likely be withdrawn and the Debtor's bankruptcy case may be converted to chapter 7. In such event, the Plan will not be confirmed and the Lenders will lose the benefit of the Plan.

## XV.    LIQUIDATION ANALYSIS

Section 1129(a)(7) of the Bankruptcy Code requires that a holder of a Claim in an impaired Class receive or retain under the Plan not less than the holder would receive or retain on account of the Claim if the debtor were liquidated under Chapter 7 of the Bankruptcy Code. This test is often referred to as the "best interest of creditors" test.

To apply the "best interests" test, the Bankruptcy Court must first calculate the aggregate dollar amount that would be generated from a liquidation of the Debtor's assets in a hypothetical

-29-

liquidation on the Effective Date under Chapter 7, including the amount of cash and other tangible assets held by such Debtor and the value of any projected recoveries on actions against third parties and other intangible assets held by such Debtor (the "Liquidation Value"). The Liquidation Value must then be reduced by the costs of liquidation, including administrative costs of the Chapter 7 estates and compensation to the Chapter 7 trustees and other professionals retained by the trustees (the "Liquidation Costs"). After estimating the Liquidation Value and the Liquidation Costs, the Bankruptcy Court must ascertain the potential Chapter 7 recoveries by Creditors and then compare those recoveries with the distributions offered under the Plan to determine if the Plan is in the "best interests" of Creditors in each Class. Attached hereto as Exhibit B is a spreadsheet (the "Spreadsheet") setting forth the Liquidation Value, the Liquidation Costs and the expected return to unsecured creditors in a Chapter 7 case.

The Debtor retained Valemount Capital ("Valemount") to provide a valuation of the Property. Valemount and its employees have extensive experience in the Las Vegas real estate market and have estimated that the rapid liquidation of the Property in a chapter 7 would generate values equal to between $445,200 and $667,800. Valemount has also estimated that the price of the Property, if properly marketed and held over the next five to seven years, would be between $14,246,400 and $21,369,600, a considerable increase in value. The Spreadsheet attached hereto adopts these values to produce the liquidation analysis set forth therein.

## XVI.  ACCEPTANCE AND CONFIRMATION OF THE PLAN

The following is a brief summary of the provisions of the Bankruptcy Code relevant to acceptance and confirmation of a plan of reorganization. Holders of Claims and equity interests are encouraged to review the relevant provisions of the Bankruptcy Code with their own attorneys.

### A.  Acceptance of the Plan

This Disclosure Statement is provided in connection with the solicitation of acceptances of the Plan. The Bankruptcy Code defines acceptance of a plan of reorganization by a Class of Claims as acceptance by holders of at least two-thirds in dollar amount, and more than one-half in number, of the Allowed Claims of that Class that have actually voted or are deemed to have voted to accept or reject a plan. The Bankruptcy Code defines acceptance of a plan of reorganization by a Class of

-30-

interests as acceptance by at least two-thirds in amount of the allowed interests of that Class that have actually voted or are deemed to have voted to accept or reject a plan.

The Debtor will not go forward with the Plan unless each Class of creditors accepts the Plan.

**B.      Confirmation**

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of a plan. Notice of the Confirmation Hearing regarding the Plan has been provided to all known holders of Claims and equity interests or their respective representatives along with this Disclosure Statement. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjourned date made at the Confirmation Hearing or any subsequent adjourned Confirmation Hearing.

Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of a plan. Any objection to confirmation of the Plan must be in writing, must conform with the Bankruptcy Rules, must set forth the name of the objecting party, the nature and amount of Claims or equity interests held or asserted by that party against the Debtor's Estate or property, and the specific basis for the objection. Such objection must be filed with the Bankruptcy Court, together with a proof of service, and served on all parties and by the date set forth on the notice of the Confirmation Hearing.

At the Confirmation Hearing, the Debtor will request that the Bankruptcy Court determine that the Plan satisfies the requirements of Section 1129 of the Bankruptcy Code. If the Bankruptcy Court so determines, the Bankruptcy Court will enter an order confirming the Plan. The applicable requirements of Section 1129 of the Bankruptcy Code are as follows:

- The Plan must comply with the applicable provisions of the Bankruptcy Code;

- The Debtor must have complied with the applicable provisions of the Bankruptcy Code;

- The Plan must have been proposed in good faith and not by any means forbidden by law;

- Any payment made or promised to be made by the Debtor under the Plan for professional services or for costs and expenses in, or in connection with, the Chapter 11 Case, or in connection with the Plan, must have been disclosed to the Bankruptcy Court, and any such payment made before Confirmation of the Plan must be reasonable, or if such payment is to be fixed after Confirmation of the

DISCLOSURE STATEMENT FOR DEBTOR'S PLAN OF REORGANIZATION DATED DECEMBER 1, 2010

Plan, such payment must be subject to the approval of the Bankruptcy Court as reasonable;

- The Debtor must have disclosed the identity and affiliates of any individual proposed to serve, after Confirmation of the Plan, as a director, officer, or voting trustee of the Debtor under the Plan. Moreover, the appointment to, or continuance in, such office of such individual, must be consistent with the interests of holders of Claims and equity interests and with public policy, and the Debtor must have disclosed the identity of any insider that the reorganized Debtor will employ or retain, and the nature of any compensation for such insider;

- With respect to each Class of impaired Claims or equity interests, either each holder of a Claim or equity interest of such Class must have accepted the Plan, or must receive or retain under the Plan on account of such Claim or equity interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would receive or retain if the Debtor were liquidated on such date under Chapter 7 of the Bankruptcy Code;

- Each Class of Claims or equity interests must have either accepted the Plan or not be impaired under the Plan;

- Except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that Allowed Administrative Claims will be paid in full on the Effective Date;

- If a Class of Creditors is impaired under the Plan, at least one impaired Class of Claim must have accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim of such Class; and

- Confirmation of the Plan must not be followed by the liquidation, or the need for further financial reorganization of the Debtor or any other successor.

## XVII. **MISCELLANEOUS PROVISIONS**

### A.    **Filing Objections to Claims**

From and after the Effective Date, the Debtor, in its capacity as estate representative, may litigate to Final Order, propose settlements of, or withdraw objections to, all pending or filed Disputed Claims and may settle or compromise any Disputed Claim without notice and a hearing and without approval of the Bankruptcy Court.

### B.    **Holding of, and Failure to Claim, Undeliverable Distributions**

All Distributions other than Distributions to the Lenders are to be made to the holder of each Allowed Claim by the Debtor as estate representative at the address of such holder listed on the Schedules or proof of claim filed by such holder at the time of such Distribution.  Distributions to the Lenders are to be made by tendering such Distributions to the Manager for the benefit of the Lenders.  If any holder's Distribution is returned as undeliverable, no further Distributions to such

holder shall be made unless and until the Debtor is notified of such holder's then current address, at which time all required Distributions shall be made to such holder. Undeliverable Distributions shall be held by the Debtor until such Distributions are claimed. All Claims for undeliverable Distributions must be made within ninety (90) days following a Distribution. After such date, all unclaimed Distributions shall be allocated pro rata to the members of the Class related to such Distribution notwithstanding any federal or state escheat laws to the contrary.

### C.    Fractional Amounts

Notwithstanding anything contained herein to the contrary, payments of fractions of dollars will not be made. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest dollar (up or down), with half dollars being rounded down.

### D.    Ex Parte Relief

Upon *ex parte* motion by the Debtor after the Confirmation Date, the Bankruptcy Court may enter such order and further orders as may be necessary or appropriate to instruct and direct the Debtor and others, and to facilitate the Distributions contemplated in the Plan.

### E.    Binding Effect

The Plan shall be binding on, and shall inure to the benefit of, the Debtor and the holders of all Claims and equity interests and their respective successors and assigns.

### F.    Exculpation

The Debtor, the Parent, the Manager, Clayton and its affiliates and each member of the Steering Committee and their respective officers, directors, agents, managers, shareholders or attorneys shall not be liable for any actions or omissions taken or not taken in connection with or arising out of the administration of the Chapter 11 Case, pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct as determined by Final Order of the Bankruptcy Court.

### G.    Governing Law

Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties and obligations of the Debtor, all Creditors and any other Person arising under the Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Nevada, without giving effect to Nevada's choice of law provisions.

### H.    Modification of Payment Terms

At any time after the Effective Date, the Debtor may modify the treatment of any Allowed Claim or equity interest in any manner adverse to the holder of such Claim or equity interest only with the prior written consent of the holder whose Allowed Claim or equity interest treatment is being adversely affected.

### I.    United States Trustee Fees

The Parent shall pay all quarterly fees payable to the Office of the United States Trustee after Confirmation in connection with the Chapter 11 Case, consistent with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and 28 U.S.C. § 1930(a)(6).

### J.    Computation of Time

In computing any period of time prescribed or allowed by the Plan, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included unless it is a Saturday, a Sunday, or a legal holiday, or, when the act to be done is the filing of a paper in the Bankruptcy Court, a day on which weather or other conditions have made the clerk's office inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days.

### K.    Final Decree

After the Estate is fully administered, the Parent shall file an application for a Final Decree, and shall serve the application on the U.S. Trustee, together with a proposed Final Decree.

*[remainder of page intentionally left blank]*

## XVIII. RECOMMENDATION AND CONCLUSION

The Debtor has analyzed different scenarios and believes that the Plan will provide for a larger distribution to holders of Claims than would otherwise result if an alternative restructuring plan were proposed or if the Debtor was liquidated under Chapter 7. In addition, any alternative other than Confirmation of the Plan could result in extensive delays and increased administrative expenses resulting in potentially smaller distributions to the holders of Claims and equity interests. Accordingly, the Debtor recommends confirmation of the Plan and urges all holders of Allowed Claims to vote to accept the Plan and to indicate acceptance by returning their Ballots so as to be received by no later than the voting deadline.

Dated: December 1, 2010                    Respectfully submitted,


                                           C-SWDE348, LLC, a Nevada limited liability company
                                           By:    LEHM, LLC, its Manager

                                           By:    _____
                                                    John A. Ritter, its Manager

**Exhibit A**
**To Disclosure Statement**

**PLAN OF REORGANIZATION DATED DECEMBER 1, 2010**

1  I. Scott Bogatz                                  Roberto J. Kampfner
   Nevada Bar No. 3367                              California State Bar No. 179026
2  BOGATZ & ASSOCIATES, P.C.                        WHITE & CASE LLP
   3455 Cliff Shadows Parkway, Suite 110            633 West Fifth Street, Suite 1900
3  Las Vegas, NV 89129                              Los Angeles, CA  90071
   Telephone:  (702) 776-7000                       Telephone:  (213) 620-7700
4  Facsimile:  (702) 776-7800                       Facsimile:  (213) 452-2329
   Email: sbogatz@isbnv.com                         Email: rkampfner@whitecase.com
5
6  Counsel for Debtor and Debtor-in-Possession,     Counsel for Southwest Desert Equities,
   C-SWDE348, LLC                                   LLC, the parent of the Debtor
7

8                    UNITED STATES BANKRUPTCY COURT

9                          DISTRICT OF NEVADA

10 In re                                         Case No.  [To Be Determined]

11 C-SWDE348, LLC,  a Nevada limited            Chapter 11
   liability company,
12                                               **DEBTOR'S PLAN OF REORGANIZATION
                                                 DATED DECEMBER 1, 2010**
13            Debtor and Debtor-in-Possession.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

ARTICLE 1.    DEFINITIONS AND RULES OF INTERPRETATION ..................................... 1
    1.1.    Additional Member Contributions ........................................................ 1
    1.2.    Administrative Claim .......................................................................... 1
    1.3.    Administrative Claim Bar Date ............................................................ 2
    1.4.    Allowed ............................................................................................. 2
    1.5.    Bankruptcy Code ............................................................................... 2
    1.6.    Bankruptcy Court ............................................................................... 2
    1.7.    Bankruptcy Rules ............................................................................... 2
    1.8.    Bar Date ............................................................................................ 2
    1.9.    Business Day ..................................................................................... 2
    1.10.    Cash ................................................................................................. 2
    1.11.    Chapter 11 Case ................................................................................ 3
    1.12.    Claim ................................................................................................ 3
    1.13.    Class ................................................................................................. 3
    1.14.    Class A Members Initial Contribution ................................................. 3
    1.15.    Class A Membership Interests ........................................................... 3
    1.16.    Class B Membership Interests ........................................................... 3
    1.17.    Class B Member Initial Contribution .................................................. 3
    1.18.    Class B Member Upfront Payment ..................................................... 3
    1.19.    Clayton ............................................................................................. 3
    1.20.    Confirmation ..................................................................................... 3
    1.21.    Confirmation Date ............................................................................. 3
    1.22.    Confirmation Hearing ........................................................................ 4
    1.23.    Confirmation Order ........................................................................... 4
    1.24.    Creditor ............................................................................................ 4
    1.25.    Debtor .............................................................................................. 4
    1.26.    Debtor Parties ................................................................................... 4
    1.27.    Deed of Trust .................................................................................... 4
    1.28.    Disputed ........................................................................................... 4
    1.29.    Distribution ....................................................................................... 4
    1.30.    Effective Date ................................................................................... 4
    1.31.    Estate ............................................................................................... 4
    1.32.    Final Decree ...................................................................................... 4
    1.33.    Final Order ........................................................................................ 5
    1.34.    Governmental Unit ............................................................................ 5
    1.35.    Governmental Unit Claims Bar Date ................................................. 5
    1.36.    Guarantee ......................................................................................... 5
    1.37.    Guarantor .......................................................................................... 5
    1.38.    Lender ............................................................................................... 5
    1.39.    Lien ................................................................................................... 5
    1.40.    Local Rules ....................................................................................... 5
    1.41.    Manager ............................................................................................ 6
    1.42.    Management Fee ............................................................................... 6
    1.43.    New Operating Agreement ................................................................ 6

DEBTOR'S PLAN OF REORGANIZATION DATED
DECEMBER 1, 2010

| | | | |
|---|---|---|---|
| 1.44. | Note | | 6 |
| 1.45. | Note Claims | | 6 |
| 1.46. | Old Membership Units | | 6 |
| 1.47. | Parent | | 6 |
| 1.48. | Person | | 6 |
| 1.49. | Petition Date | | 6 |
| 1.50. | Plan | | 6 |
| 1.51. | Plan Documents | | 6 |
| 1.52. | Professionals | | 7 |
| 1.53. | Professional Fees | | 7 |
| 1.54. | Property | | 7 |
| 1.55. | Property Tax Claims | | 7 |
| 1.56. | Pro Rata Share | | 7 |
| 1.57. | Releasing Lenders | | 7 |
| 1.58. | Releasing Lender Parties | | 7 |
| 1.59. | Schedules | | 7 |
| 1.60. | Steering Committee | | 7 |
| 1.61. | Supplemental Capital Contribution | | 7 |
| 1.62. | Waterfall Increase Amount | | 7 |

**ARTICLE 2.    TREATMENT OF UNCLASSIFIED CLAIMS** ... 8
| | | | |
|---|---|---|---|
| 2.1. | Unclassified Claims | | 8 |
| 2.2. | Administrative Claims. | | 8 |
| 2.3. | Claims for Professional Fees | | 8 |
| 2.4. | Post-Effective Date Professional Fees | | 9 |

**ARTICLE 3.    CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS** ... 9

**ARTICLE 4.    TREATMENT OF CLAIMS AND EQUITY INTERESTS** ... 9
| | | | |
|---|---|---|---|
| 4.1. | Class 1 – Property Tax Claims. | | 9 |
| 4.2. | Class 2 – Note Claims. | | 9 |
| 4.3. | Class 3 – Old Membership Units. | | 10 |

**ARTICLE 5.    IMPLEMENTATION OF THE PLAN** ... 10
| | | | |
|---|---|---|---|
| 5.1. | Issuance of Class A Membership Interests | | 10 |
| 5.2. | Adoption of Operating Agreement | | 10 |
| 5.3. | Management | | 11 |
| 5.4. | Release of Deed of Trust | | 11 |
| 5.5. | Certain Tax Provisions | | 12 |
| 5.6. | Issuance of New Membership Units | | 12 |
| 5.7. | Post-confirmation matters | | 12 |
| 5.8. | Release of Claims by Releasing Lenders | | 13 |
| 5.9. | Release of Claims by Debtor Parties | | 14 |
| 5.10. | Corporate Authority | | 14 |

**ARTICLE 6.    CONDITIONS PRECEDENT** ... 15
| | | | |
|---|---|---|---|
| 6.1. | Condition to Confirmation. | | 15 |
| 6.2. | Conditions to Effectiveness | | 15 |
| 6.3. | Waiver of Conditions. | | 15 |
| 6.4. | Failure of Conditions | | 15 |

ARTICLE 7.     [RESERVED] ...................................................................................... 16

ARTICLE 8.     DISPUTED CLAIMS ......................................................................... 16
    8.1.     Objection Deadlines ............................................................................. 16
    8.2.     Prosecution of Disputed Claims ........................................................... 16
    8.3.     Entitlement to Plan Distributions upon Allowance .............................. 16

ARTICLE 9.     EFFECT OF CONFIRMATION ........................................................ 16
    9.1.     Revesting of Assets ............................................................................. 16
    9.2.     Discharge ............................................................................................. 17

ARTICLE 10.    RETENTION OF JURISDICTION .................................................... 17

ARTICLE 11.    AMENDMENT AND WITHDRAWAL OF PLAN ............................ 19
    11.1.    Amendment of the Plan ....................................................................... 19
    11.2.    Revocation or Withdrawal of the Plan ................................................. 20

ARTICLE 12.    ACCEPTANCE OR REJECTION OF THE PLAN ............................. 20
    12.1.    Impaired Classes to Vote ..................................................................... 20
    12.2.    Acceptance by Class of Creditors ........................................................ 20

ARTICLE 13.    MISCELLANEOUS ........................................................................... 20
    13.1.    Settlement of Objections after Effective Date ...................................... 20
    13.2.    Holding of, and Failure to Claim, Undeliverable Distributions ............ 20
    13.3.    Fractional Amounts ............................................................................. 21
    13.4.    Ex Parte Relief .................................................................................... 21
    13.5.    Exculpation .......................................................................................... 21
    13.6.    Binding Effect ...................................................................................... 21
    13.7.    Governing Law ..................................................................................... 21
    13.8.    Modification of Payment Terms ........................................................... 22
    13.9.    United States Trustee Fees ................................................................... 22
    13.10.   Computation of Time ........................................................................... 22
    13.11.   Final Decree ......................................................................................... 22
    13.12.   No Admissions ..................................................................................... 22

## PLAN OF REORGANIZATION

C-SWDE348, LLC, a Nevada limited liability company (the "<u>Debtor</u>"), the debtor and debtor-in-possession in the above-captioned Chapter 11 Case, hereby proposes the following plan of reorganization (the "<u>Plan</u>") for the resolution of the Debtor's outstanding Claims and equity interests.

*All holders of Claims against, and equity interests in, the Debtor are encouraged to read the Plan and the related solicitation materials in their entirety before voting to accept or reject the Plan.*

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, and those restrictions on modifications set forth in Section 11.1 of the Plan, the Debtor expressly reserves the right to alter, amend, or modify the Plan one or more times before its substantial consummation.

## ARTICLE 1. DEFINITIONS AND RULES OF INTERPRETATION

For purposes of the Plan, all capitalized terms shall have the meanings ascribed to them in this Article 1 of the Plan. Any term used in the Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, retains the meaning specified for such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable. Whenever the context requires, such terms include the plural as well as the singular, the masculine gender includes the feminine gender, and the feminine gender includes the masculine gender.

As used in the Plan, the following terms have the meanings specified below:

**1.1. Additional Member Contributions**. Has the meaning set forth in the New Operating Agreement.

**1.2. Administrative Claim**. A Claim for any cost or expense of administration of the Chapter 11 Case allowed under sections 503(b) or 507(b) of the Bankruptcy Code and entitled to priority under section 507(a)(2) of the Bankruptcy Code, including, without limitation: (a) fees payable under 28 U.S.C. § 1930; (b) actual and necessary costs and expenses incurred in the ordinary course of the Debtor's businesses; (c) actual and necessary costs and expenses of preserving

the Estate or administering the Chapter 11 Case; and (d) all Professional Fees to the extent Allowed by Final Order under sections 330, 331, or 503 of the Bankruptcy Code.

**1.3. Administrative Claim Bar Date**. The date that is thirty (30) days after the Effective Date.

**1.4. Allowed**. With reference to any Claim against or equity interest in the Debtor, (a) any Claim which has been listed by the Debtor in the Schedules, as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim or objection to Claim has been filed, (b) any Claim or equity interest allowed hereunder, (c) any Claim, proof of which was filed on or before the Bar Date, or, with respect to a Governmental Unit, before the Governmental Unit Claims Bar Date, or equity interest, which is not Disputed, (d) any Claim or equity interest that is compromised, settled or otherwise resolved pursuant to a Final Order of the Bankruptcy Court, or (e) any Claim or equity interest which, if Disputed, has been allowed by Final Order.

**1.5. Bankruptcy Code**. Title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended from time to time and as applicable to the Chapter 11 Case.

**1.6. Bankruptcy Court**. The United States Bankruptcy Court for the District of Nevada that will have jurisdiction over the Chapter 11 Case.

**1.7. Bankruptcy Rules**. Collectively, the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. § 2075 and any Local Rules, as applicable to the Chapter 11 Case.

**1.8. Bar Date**. The date established by order of the Bankruptcy Court as the last day for the filing of proofs of claim against the Debtor; provided, that the deadline for filing proofs of claim by a Governmental Unit shall be the Governmental Unit Claims Bar Date.

**1.9. Business Day**. Any day other than a Saturday, Sunday, or legal holiday, as defined in Bankruptcy Rule 9006(a).

**1.10. Cash**. Currency, certified checks, official checks, money orders, negotiable instruments, and wire transfers of immediately available funds.

**1.11. Chapter 11 Case**. The case under Chapter 11 of the Bankruptcy Code in which the Debtor is a debtor and debtor-in-possession, pending before the Bankruptcy Court.

**1.12. Claim**. A claim, as defined in section 101(5) of the Bankruptcy Code, against a Person or its property, including, without limitation: (a) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured arising at any time before the Effective Date; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**1.13. Class**. A category of holders of Claims or equity interests that are substantially similar in nature to the Claims or equity interests of other holders placed in such category, as designated in Article 3 of the Plan.

**1.14. Class A Members Initial Contribution**. An amount equal to the original principal amount of the Note.

**1.15. Class A Membership Interests**. The membership interests in the reorganized Debtor to be issued to the Lenders pursuant to the Plan.

**1.16. Class B Membership Interests**. The membership interests in the reorganized Debtor to be issued to the Parent pursuant to the Plan.

**1.17. Class B Member Initial Contribution**. Has the meaning set forth in the New Operating Agreement.

**1.18. Class B Member Upfront Payment**. Has the meaning set forth in the New Operating Agreement.

**1.19. Clayton**. L.S.T. Investments, LLC, a Nevada limited liability company doing business as Clayton Mortgage & Investment.

**1.20. Confirmation**. The entry of the Confirmation Order by the Bankruptcy Court.

**1.21. Confirmation Date**. The date on which the Bankruptcy Court enters the Confirmation Order.

**1.22. Confirmation Hearing**. The hearing held by the Bankruptcy Court to consider Confirmation of the Plan.

**1.23. Confirmation Order**. The order of the Bankruptcy Court confirming the Plan in accordance with the Bankruptcy Code.

**1.24. Creditor**. Has the meaning set forth in section 101(10) of the Bankruptcy Code.

**1.25. Debtor**. Has the meaning set forth in the preamble to the Plan.

**1.26. Debtor Parties**. Has the meaning set forth in Section 5.8 of the Plan.

**1.27. Deed of Trust**. That certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated as of March 27, 2006 securing the Note and recorded in the official records of Clark County, Nevada as Instrument No. 0002928.

**1.28. Disputed**. With respect to Claims, any Claim: (a) that is listed in the Schedules as unliquidated, disputed, or contingent and as to which no proof of claim has been filed; or (b) as to which the Debtor or any other proper party-in-interest has interposed a timely objection or request for estimation, or has sought to equitably subordinate or otherwise limit recovery in accordance with the Bankruptcy Code and the Bankruptcy Rules, or which is otherwise disputed by the Debtor in accordance with applicable law and as to which such objection, request for estimation, or request for subordination has not been withdrawn or determined by a Final Order.

**1.29. Distribution**. A payment of Cash to the holder of an Allowed Claim pursuant to the Plan.

**1.30. Effective Date**. The later of: (a) the first Business Day that is at least fourteen (14) days after the Confirmation Date and on which no stay of the Confirmation Order is in effect; and (b) the Business Day on which all of the conditions set forth in Section 6.2 of the Plan have been satisfied or waived.

**1.31. Estate**. The estate created in the Debtor's Chapter 11 Case in accordance with section 541 of the Bankruptcy Code.

**1.32. Final Decree**. A final decree closing this Chapter 11 Case.

**1.33.  Final Order**.  An order or judgment of the Bankruptcy Court:  (a) as to which the time to appeal, petition for certiorari, move for retrial, or seek other review or reconsideration has expired and as to which no appeal, petition for certiorari, motion for retrial or other proceeding for review or reconsideration is pending; (b) as to which any right to appeal, to petition for certiorari, to move for retrial, or to seek other review or reconsideration has been waived in writing in form and substance satisfactory to the Debtor; or (c) as to which, if an appeal, writ of certiorari, retrial or other review or reconsideration has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed or from which such relief was sought or such court has denied such appeal or such relief and the time to take any further appeal, petition for certiorari, move for retrial or seek other review or reconsideration has expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order does not prevent such order from being a Final Order.

**1.34.  Governmental Unit**.  Has the meaning set forth in section 101(27) of the Bankruptcy Code.

**1.35.  Governmental Unit Claims Bar Date**.  The deadline for filing proofs of claim by a Governmental Unit.

**1.36.  Guarantee**.  The guarantee issued by the Guarantor in favor of the Lenders in connection with the Note.

**1.37.  Guarantor**.  John A. Ritter, an individual and Darrin D. Badger, an individual.

**1.38.  Lender**.  A holder of a beneficial interest in the Note.

**1.39.  Lien**.  A lien as defined in section 101(37) of the Bankruptcy Code, except a lien that has been avoided in accordance with sections 506, 544, 545, 546, 547, 548, 549, or 553 of the Bankruptcy Code.

**1.40.  Local Rules**.  The local rules of the United States Bankruptcy Court for the District of Nevada governing proceedings in this Chapter 11 Case.

**1.41. Manager.** The Person designated by Clayton to manage the reorganized Debtor pursuant to the terms of the New Operating Agreement.

**1.42. Management Fee.** Collectively, an annual fee payable by the Debtor to the Manger, on a quarterly basis, in an amount equal to .5% of the original principal amount of the Note.

**1.43. New Operating Agreement.** The operating agreement to govern the Debtor after the Effective Date substantially in the form attached hereto as Exhibit A.

**1.44. Note.** That certain promissory note dated as of March 27, 2006 in the original principal amount of $11,575,000 issued by Parent and assumed by the Debtor prior to the Petition Date and attached hereto as Exhibit B.

**1.45. Note Claims.** The Claims of the Lenders under or in connection with the Note, including, without limitation, any Claims in respect of principal, interest and fees.

**1.46. Old Membership Units.** The membership units in the Debtor issued prior to the confirmation of the Plan.

**1.47. Parent.** Southwest Desert Equities, LLC, a Nevada limited liability company.

**1.48. Person.** Any individual, corporation, partnership, limited liability company, joint venture, association, joint-stock company, trust, unincorporated association or organization, or other "person" as defined in section 101(41) of the Bankruptcy Code as well as any governmental agency, Governmental Unit or associated political subdivision.

**1.49. Petition Date.** The date upon the Debtor files a petition for relief under chapter 11 of the Bankruptcy Code.

**1.50. Plan.** This plan of reorganization, either in its present form or as it may be amended, supplemented or modified from time to time, including, without limitation, all of its annexed exhibits and schedules and the Plan Documents.

**1.51. Plan Documents.** The New Operating Agreement and all other material documents required to implement the provisions of the Plan.

1    **1.52. Professionals**. Those Persons employed in accordance with an order of the

2    Bankruptcy Court under sections 327 or 1103 of the Bankruptcy Code and to be compensated for

3    services under sections 327, 328, 329, 330, and 331 of the Bankruptcy Code.

4    **1.53. Professional Fees**. The Administrative Claims for compensation and reimbursement

5    of expenses of Professionals submitted in accordance with sections 330 or 331 of the Bankruptcy

6    Code, or any Administrative Claims Allowed by the Bankruptcy Court pursuant to section 503(b)(4)

7    of the Bankruptcy Code.

8    **1.54. Property**. All of the Debtor's right, title and interest of any nature in property of any

9    kind as of the Confirmation Date, wherever located, as specified in section 541 of the Bankruptcy

10   Code, including, without limitation, the real property identified by APN No. 125-03-001-002.

11   **1.55. Property Tax Claims**. Any Claims of a Governmental Unit for property taxes related

12   to the Property, whether such liability is *in rem*, *in personam* or both.

13   **1.56. Pro Rata Share**. The proportion that an Allowed Claim bears to the aggregate amount

14   of all Claims in a particular class, including, without limitation, Disputed Claims that have not been

15   disallowed by a Final Order.

16   **1.57. Releasing Lenders**. Has the meaning set forth in Section 5.8.

17   **1.58. Releasing Lender Parties**. Has the meaning set forth in Section 5.8.

18   **1.59. Schedules**. The schedules of assets and liabilities, the list of holders of interests, and

19   the statements of financial affairs filed by the Debtor under section 521 of the Bankruptcy Code and

20   Bankruptcy Rule 1007, as such schedules, lists, and statements may have been or may be

21   supplemented or amended from time to time.

22   **1.60. Steering Committee.** Has the meaning set forth in the New Operating Agreement.

23   **1.61. Supplemental Capital Contribution.** Has the meaning set forth in the New

24   Operating Agreement.

25   **1.62. Waterfall Increase Amount.** An amount equal to the sum of the Class A Members

26   Initial Contribution and an annual assessment equal to 1% of the Class A Members Initial

27   Contribution, prorated monthly, from the Effective Date through the date of the sale of the Property.

28

## ARTICLE 2.  TREATMENT OF UNCLASSIFIED CLAIMS

**2.1.  Unclassified Claims**.  As provided in section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, including, without limitation, Claims for Professional Fees are not classified for purposes of voting on, or receiving distributions under, the Plan.  Holders of such Claims are not entitled to vote on the Plan.  All such Claims instead are treated separately in accordance with this Article 2 and in accordance with the requirements set forth in section 1129(a)(9)(A) of the Bankruptcy Code.

**2.2.  Administrative Claims**.

    **2.2.1.  Generally**.  Each Administrative Claim other than a Claim for Professional Fees shall be paid in full in Cash by the Debtor on the later to occur of (a) the Effective Date; (b) the tenth (10th) day after such Administrative Claim is Allowed; and (c) such date as the holder of any such Administrative Claim and the Debtor may agree.

    **2.2.2.  Requests for Payment**.  All requests for payment of Administrative Claims, other than requests for payment of Claims for Professional Fees, must be filed by the Administrative Claim Bar Date or the holders thereof shall be forever barred from asserting such Administrative Claims against the Debtor.

**2.3.  Claims for Professional Fees**.  Each Person seeking an award by the Bankruptcy Court of Professional Fees: (a) must file a final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date within thirty (30) days of the Effective Date; and (b) if the Bankruptcy Court grants such an award, must be paid in full in Cash by the Debtor with funds contributed by the Parent in such amounts as are allowed by the Bankruptcy Court as soon thereafter as practicable.  All final applications for allowance and disbursement of Professional Fees must be in compliance with all of the requirements of the Bankruptcy Code, the Bankruptcy Rules and any applicable guidelines and with all of the terms and conditions set forth in any applicable order of the Bankruptcy Court, including, without limitation, the Confirmation Order, and all other orders governing payment of Professional Fees.

**2.4.  Post-Effective Date Professional Fees**.  All Professional Fees for services rendered in connection with the Chapter 11 Case and the Plan after the Effective Date may be paid by the Debtor upon receipt of an invoice for such services, or on such other terms to which the Debtor and the relevant Professional may agree, without the need for further Bankruptcy Court authorization or entry of a Final Order.

## ARTICLE  3.  CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

In accordance with section 1123(a)(1) of the Bankruptcy Code, all Claims of Creditors (except those Claims receiving treatment as set forth in Article 2) and holders of equity interests, including holders of Old Membership Units are placed in the Classes described below for all purposes, including, without limitation, voting on, Confirmation of, and Distribution under, the Plan:

| Class 1 | Property Tax Claims | Unimpaired, deemed to accept |
|---------|---------------------|------------------------------|
| Class 2 | Note Claims | Impaired, entitled to vote |
| Class 3 | Old Membership Units | Impaired, entitled to vote |

## ARTICLE  4.  TREATMENT OF CLAIMS AND EQUITY INTERESTS

**4.1.  Class 1 – Property Tax Claims**.

**4.1.1.  Impairment and Voting**.  Class 1 consists of Property Tax Claims.  Property Tax Claims are unimpaired by the Plan; consequently, the holders of Property Tax Claims are deemed to have accepted the Plan.

**4.1.2.  Treatment**.  On the Effective Date, each holder of an Allowed Property Tax Claim shall receive a single Cash payment equal to the sum of (a) its Allowed Property Tax Claim and (b) all accrued postpetition interest calculated at the rate required by applicable nonbankruptcy law.

**4.2.  Class 2 – Note Claims**.

**4.2.1.  Impairment and Voting**.  Class 2 consists of the Note Claims.  Note Claims are impaired by the Plan; consequently, the holders of Note Claims are entitled to vote on the Plan.

**4.2.2.  Treatment**.  On the Effective Date, each holder of a Note Claim shall receive, in complete satisfaction of such Claim and any Liens under the Deed of Trust securing such Claim,

its Pro Rata Share of 100% of the Class A Membership Interests as more particularly set forth in the New Operating Agreement.  Such Class A Membership Interests shall have all of the rights and obligations set forth in the New Operating Agreement.

### 4.3.  Class 3 – Old Membership Units.

**4.3.1.  Impairment and Voting.**  Class 3 consists of the Old Membership Units.  Old Membership Units are impaired by the Plan; consequently, the holders of Old Membership Units are entitled to vote on the Plan.

**4.3.2.  Treatment.**  On the Effective Date, and upon the payment of the Class B Member Upfront Payment, the Old Membership Units shall be exchanged for the Class B Membership Interests.  Such Class B Membership Interests shall have all of the rights and obligations set forth in the New Operating Agreement.

## ARTICLE 5.  IMPLEMENTATION OF THE PLAN

**5.1.  Issuance of Class A Membership Interests.**  On the Effective Date, the Old Membership Units shall be cancelled and the Debtor shall issue, without further order of the Bankruptcy Court or need for corporate approval, the Class A Membership Interests and the Class B Membership Interests as provided for in the Plan and the New Operating Agreement.

**5.2.  Adoption of Operating Agreement.**  On and after the Effective Date, and without further order of the Bankruptcy Court or need for corporate approval, the Debtor shall be governed by the New Operating Agreement and such agreement shall supersede all other operating agreements in respect of the Debtor.  The New Operating Agreement shall provide at all times that distributions from the reorganized Debtor to its members, including the holders of Class A Membership Interests and Class B Membership Interests, shall be paid <u>first</u> to the makers of Supplemental Capital Contributions in an amount equal to all unreturned Supplemental Capital Contributions together with simple interest at a rate of 8% per annum until all such unreturned Supplemental Capital Contributions (together with accrued interest) shall have been returned in full, <u>second</u>, ratably, in proportion to the amount then due, to the makers of Additional Member Contributions and the Parent in the amount of all unreturned Additional Member Contributions and unreturned Class B Member

1  Initial Contributions together with simple interest of 8% per annum until all unreturned Additional

2  Member Contributions and the Class B Member Initial Contributions are returned in full, <u>third</u>, until

3  the holders of Class A Membership Interests have received an amount equal to the Waterfall

4  Increase Amount, (a) 90% to the holders of Class A Membership Interests on a pro rata basis;

5  <u>provided</u> that the pro rata distributions of the Class A members shall be adjusted so that the makers

6  of Supplemental Capital Contributions (including the Parent in its capacity as the Class B member if

7  any Supplemental Capital Contributions have been made by the Parent in such capacity) receive an

8  additional 12% annual return at the expense of the Class A members whose failure to make

9  Additional Member Contributions necessitated the making of Supplemental Capital Contributions,

10  and (b) 10% to the Parent in its capacity as the Class B member, and, <u>fourth</u>, 70% to the holders of

11  Class A Membership Interests on a pro rata basis and 30% to the Parent in its capacity as the Class B

12  member.

13       **5.3.  Management**.  On and after the Effective Date, the Debtor shall be managed as provided

14  in the New Operating Agreement.  Further, without limiting the generality of the foregoing, the

15  Manager shall be entitled to receive the Management Fee and all other compensation and

16  reimbursements described in the New Operating Agreement.  The entry of the Confirmation Order

17  shall ratify and approve all actions taken by the Debtor prior to the date thereof.

18       **5.4.  Release of Deed of Trust**.  On the Effective Date, all Liens granted under the Deed of

19  Trust shall be deemed extinguished and satisfied as of the Effective Date without further order of the

20  Bankruptcy Court.  Recordation of the Confirmation Order (or a supplemental order implementing

21  the Plan by evidencing the release of the Deed of Trust) shall be deemed to constitute a full

22  reconveyance of the Deed of Trust without further order of Bankruptcy Court.  Without limiting the

23  generality of the foregoing, the entry of the Confirmation Order shall constitute a direction for

24  Clayton, in its capacity as servicer for the Lenders, to deliver the Deed of Trust, along with any

25  reconveyances reasonably requested by the Debtor, to the Debtor to evidence the automatic

26  cancellation and satisfaction of the Deed of Trust as of the Effective Date.

27

28

**5.5. Certain Tax Provisions**. Pursuant to section 1146(a) of the Bankruptcy Code, the making or delivery of an instrument of transfer as part of a transaction authorized by the Plan, including, without limitation, any transfers of Property shall not be taxed under any law imposing a stamp tax or similar tax.

**5.6. Issuance of New Membership Units**. Pursuant to section 1145(a) of the Bankruptcy Code, section 5 of the Securities Act of 1933 and any state or local law requiring registration for the offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security shall not apply to the issuance of the Class A Membership Interests and the Class B Membership Interests.  Notwithstanding the foregoing, the Class A Membership Interests and Class B Membership Interests, once issued, shall not be publically traded and may only be transferred on the terms and conditions set forth in the New Operating Agreement.  In addition, pursuant to section 1125(e) of the Bankruptcy Code, any Persons that solicit the acceptance or rejection of the Plan, including, the Parent, the Debtor and the Manager, in good faith and in compliance with the Bankruptcy Code, or that participate, in good faith and in compliance with the applicable provisions of this title, in the offer, issuance, sale or purchase of a security, offered or sold under the Plan, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan or the offer, issuance, sale or purchase of securities.

**5.7. Post-confirmation matters**.

**5.7.1. Responsibilities of the Reorganized Debtor**.  On and after the Effective Date, without need for further action by the members or managers of the Debtor, and without further order of the Bankruptcy Court, the Debtor shall be appointed estate representative under section 1123 of the Bankruptcy Code and shall be solely responsible for and shall have authority to: (a) make all Distributions required to be made on or after the Effective Date to the holders of Allowed Claims, including Distributions of Class A Membership Interests and Class B Membership Interests; (b) settle, resolve and object to Claims, including Note Claims; (c) retain, employ and utilize such Professionals as may be necessary without further approval of the Bankruptcy Court; and (d) do all

1  things necessary and appropriate to fulfill the duties and obligations of the Debtor under the Plan, the

2  Confirmation Order, the Bankruptcy Code and the Bankruptcy Rules.  The Debtor, in its capacity as

3  estate representative, shall comply with all withholding and reporting requirements imposed upon it

4  by any Governmental Unit under applicable law and all Distributions shall be subject to such

5  withholding and reporting requirements, if any.

6        **5.7.2. Responsibilities of the Parent**.  On and after the Effective Date, and without

7  further order of the Bankruptcy Court, the Parent shall be appointed estate representative under

8  section 1123 of the Bankruptcy Code and shall be solely responsible for and shall have authority to:

9  (a) pay all fees payable under 28 U.S.C. § 1930; (b) file any post-Confirmation reports required by

10  the Bankruptcy Code or the Bankruptcy Court and (c) move for the entry of a Final Decree and

11  prepare and file any pleadings as may be required by the Bankruptcy Court in connection with the

12  Final Decree and the closing of the Chapter 11 Case.

13        **5.8. Release of Claims by Releasing Lenders**.  On the Effective Date, each of the Lenders

14  voting in favor of the Plan (each a "Releasing Lender") and Clayton, on behalf of itself and each of

15  its agents, successors, assigns and representatives of any kind (collectively, the "Releasing Lender

16  Parties"), shall and hereby does voluntarily forever release and discharge the Debtor, any other

17  obligors under the Note, the Guarantor, any obligors under any other guarantees of the Note (if any)

18  and each of such Person's respective agents, successors, assigns and representatives of any kind

19  (collectively, the "Debtor Parties") from any and all claims, demands, causes of action and rights of

20  every kind, nature or character arising or existing on or before the Effective Date arising out of or in

21  any way related to the Note, the Guarantee, any other guarantees of the Note or the Property;

22  whether absolute, inchoate or contingent; whether determined or undetermined, known or unknown,

23  proven or unproven; whether held individually, jointly, or jointly and severally; whether arising

24  directly, indirectly, derivatively, or by way of any legal or equitable right of subrogation,

25  contribution, indemnity, estoppel, marshalling of assets or otherwise; whether for compensation,

26  relief, protection, punishment or any other remedy or result of any kind, character or nature; whether

27  based upon any intentional or negligent conduct, strict liability, any tort of any kind, upon any

28

breach of any contract or upon any other grounds or upon any other theory whatsoever; whether asserted or subject to assertion by complaint, cross-complaint, counterclaim, affirmative defense, or other pleading, by motion, by notice or otherwise; whether asserted or subject to assertion in any jurisdiction, in any court or other forum or with any federal, state, county, municipal or other governmental authority, agency or official; and whether arising at law, in equity or otherwise.

**5.9.  Release of Claims by Debtor Parties**.  On the Effective Date, each Debtor Party hereby forever releases and discharges each Releasing Lender Party from any and all claims, demands, causes of action and rights of every kind, nature or character arising or existing on or before the Effective Date arising out of or in any way related to the Note, the Guarantee, any other guarantees of the Note (if any) or the Property; whether absolute, inchoate or contingent; whether determined or undetermined, known or unknown, proven or unproven; whether held individually, jointly, or jointly and severally; whether arising directly, indirectly, derivatively, or by way of any legal or equitable right of subrogation, contribution, indemnity, estoppel, marshalling of assets or otherwise; whether for compensation, relief, protection, punishment or any other remedy or result of any kind, character or nature; whether based upon any intentional or negligent conduct, strict liability, any tort of any kind, upon any breach of any contract or upon any other grounds or upon any other theory whatsoever; whether asserted or subject to assertion by complaint, cross-complaint, counterclaim, affirmative defense, or other pleading, by motion, by notice or otherwise; whether asserted or subject to assertion in any jurisdiction, in any court or other forum or with any federal, state, county, municipal or other governmental authority, agency or official; and whether arising at law, in equity or otherwise.

**5.10.  Corporate Authority.**  The entry of the Confirmation Order shall constitute authorization for the Debtor to take or cause to be taken all corporate actions necessary or appropriate to implement all provisions of, and consummate, the Plan, and the Plan Documents prior to, on and after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order, rule, or regulation, including, without limitation, any action

required by holders of Old Membership Units, including, among other things, the issuance of Class A Membership Interests and Class B Membership Interests, and the adoption of the New Operating Agreement under the Plan.

## ARTICLE 6. CONDITIONS PRECEDENT

**6.1. Condition to Confirmation.** It is a condition precedent to Confirmation that the Bankruptcy Court enter a Confirmation Order in form and substance reasonably acceptable to the Debtor and Clayton.

**6.2. Conditions to Effectiveness.** The following are conditions precedent to the occurrence of the Effective Date:

        (a)     the Confirmation Date shall have occurred;

        (b)     the Confirmation Order shall have been entered and shall be a Final Order;

        (c)     each of the "Company Conditions" set forth in the New Operating Agreement shall have been satisfied;

        (d)     no request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code shall have been made, or, if made, remain pending;

        (e)     the Debtor shall have received all approvals necessary or appropriate to substantially consummate the Plan; and

        (f)     each and every Plan Document shall be fully executed and in form and substance reasonably satisfactory to the Debtor and Clayton.

**6.3. Waiver of Conditions.** Conditions to Confirmation and the occurrence of the Effective Date may be waived, in whole or in part, by the Debtor at any time with the consent of Clayton or an order of the Bankruptcy Code.

**6.4. Failure of Conditions.** If the Effective Date shall not occur, the Debtor and all other parties in interest shall retain all their rights and remedies as if the Plan had not been proposed. Among other things, the Plan shall be null and void and nothing contained in the Plan shall: (a) constitute a waiver of any Claims against or equity interests in the Debtor or (b) prejudice in any manner the rights of the Debtor or the Lenders.

# ARTICLE 7. [RESERVED]
# ARTICLE 8. DISPUTED CLAIMS

**8.1. Objection Deadlines.** Any objections to Administrative Claims and all other Claims made after the Effective Date shall be filed and served by the Debtor on the holders of such Administrative Claims and Claims not later than sixty (60) days after the Effective Date or such later date as may be approved by the Bankruptcy Court via *ex parte* request.

**8.2. Prosecution of Disputed Claims.** The Debtor, as estate representative, may object to the allowance of Claims and Administrative Claims filed with the Bankruptcy Court with respect to which liability is disputed in whole or in part. All objections that are filed and prosecuted as provided herein shall be litigated to Final Order or compromised and settled in accordance with Section 13.1.

**8.3. Entitlement to Plan Distributions upon Allowance.** Notwithstanding any other provision of the Plan, no Distribution shall be made with respect to any Claim to the extent it is a Disputed Claim, unless and until such Disputed Claim becomes an Allowed Claim. When a Claim that is not an Allowed Claim as of the Effective Date becomes an Allowed Claim (regardless of when), the holder of such Allowed Claim shall thereupon become entitled to receive Distributions in respect of such Claim the same as though such Claim had been an Allowed Claim on the Effective Date.

# ARTICLE 9. EFFECT OF CONFIRMATION

**9.1. Revesting of Assets.** Subject to the provisions of the Plan and the Confirmation Order, the property of the Estate, including, without limitation, the Property, shall vest in the Debtor on the Effective Date. As of the Effective Date, all such property, including, without limitation, the Property, shall be free and clear of all Claims, Liens and equity interests, including, without limitation, any claims arising from the Note, any Liens arising from the Deed of Trust and the Old Membership Units to the fullest extent permitted by section 1141(c) of the Bankruptcy Code. From and after the Effective Date, the Debtor shall be free of any restriction imposed by the Bankruptcy

1 | Court, the Bankruptcy Code and the Bankruptcy Rules, other than the obligations set forth in the

2 | Plan, or the Confirmation Order.

3 | **9.2. Discharge**. Except as provided in the Plan or the Confirmation Order, the rights

4 | afforded under the Plan and the treatment of Claims and equity interests under the Plan are in

5 | exchange for and in complete satisfaction, discharge, and release of, all Claims.  Except as provided

6 | in the Plan or the Confirmation Order, Confirmation discharges the Debtor and the reorganized

7 | Debtor from all Claims or other debts that arose before the Effective Date, and all debts of the kind

8 | specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not: (a) a proof of

9 | claim based on such debt is filed or deemed filed under Section 501 of the Bankruptcy Code; (b) a

10 | Claim based on such debt is Allowed under Section 502 of the Bankruptcy Code; or (c) the holder of

11 | a Claim based on such debt has accepted the Plan.

12 | **ARTICLE 10.  RETENTION OF JURISDICTION**

13 | Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective

14 | Date, the Bankruptcy Court shall retain and have all authority and jurisdiction as is allowed under

15 | the Bankruptcy Code and other applicable law to enforce the provisions, purposes, and intent of the

16 | Plan including, without limitation, matters or proceedings that relate to:

17 | (a)    allowance, disallowance, determination, liquidation, classification, estimation,

18 | or establishment of the priority or secured or unsecured status of any Claim, including, without

19 | limitation, the resolution of any request for payment of any Administrative Claim and the resolution

20 | of any and all objections to the allowance or priority of Claims;

21 | (b)    requests for payment of Claims entitled to priority under section 507(a) of the

22 | Bankruptcy Code, including, without limitation, compensation and reimbursement of expenses for

23 | Professionals to the extent Bankruptcy Court approval therefore is required under the Plan or the

24 | Confirmation Order;

25 | (c)    the title, rights or interests of the Debtor in any property, including, without

26 | limitation, the Property and the recovery of all assets and property of the Estate wherever located;

27

28

(d)      any right, power, action, or duty of the Debtor, the Parent, Clayton or the Lenders under the Plan;

(e)      any determination or estimation necessary or appropriate under section 505 of the Bankruptcy Code or other determination or estimation relating to tax returns filed or to be filed by the Debtor for periods through the end of the fiscal year in which the Effective Date occurs, including, without limitation, the determination of the amount of taxes, net operating losses, tax attributes, tax benefits, tax refunds, and related matters of the Debtor;

(f)      ensuring that Distributions to holders of Allowed Claims are accomplished in accordance with the Plan;

(g)      resolution of controversies and disputes, including, without limitation, the correction of any mistake, defect, or omission regarding consummation, interpretation or enforcement of the Plan, the Confirmation Order, and any agreements referred to in the Plan or executed in contemplation of or to implement the Plan;

(h)      resolution of any motions, adversary proceedings, contested or litigated matters, and any other matters involving the Debtor that may be pending on the Effective Date;

(i)      entry of such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan;

(j)      modification of the Plan before or after the Effective Date under section 1127 of the Bankruptcy Code or any contract, instrument, release, or other agreement or document created in connection with the Plan; or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, or any contract, instrument, release, or other agreement or document created in connection with the Plan in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code;

(k)      the entry of an order including injunctions necessary to enforce the title, rights, and powers of the Debtor and the purposes and intent of the Plan, and to impose such

limitations, restrictions, terms and conditions of such title, rights and powers as the Bankruptcy Court may deem necessary;

(l)    implementation of the provisions of the Plan and entry of such orders (i) in aid of Confirmation of the Plan, including, without limitation, appropriate orders to protect the Debtor from actions by holders of Claims, or (ii) as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(m)    determination of any other matters that (i) may arise in connection with or relate to the Plan, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Confirmation Order except as otherwise provided in the Plan, or (ii) are otherwise provided under the Bankruptcy Code or other applicable law; and

(n)    entry of a Final Decree closing the Chapter 11 Case, including, without limitation, provisions for injunctive relief as may be equitable, consistent with Bankruptcy Rule 3022 and for retention of jurisdiction for the Bankruptcy Court for purposes of this Article 10. Notwithstanding anything set forth in this Article 10, nothing in the Plan or the Confirmation Order shall provide the Bankruptcy Court with any jurisdiction to determine the rights of the Debtor, the Parent, the Guarantor or any of the Lenders under or in connection with NRS §645B.340.

## ARTICLE 11. AMENDMENT AND WITHDRAWAL OF PLAN

**11.1.  Amendment of the Plan**.  At any time before the Confirmation Date, the Debtor may alter, amend, or modify the Plan under section 1127(a) of the Bankruptcy Code; provided that the Debtor may not materially modify the treatment of any Class that has accepted the Plan without the consent of such Class.  After the Confirmation Date and before substantial consummation of the Plan as defined in section 1101(2) of the Bankruptcy Code, the Debtor may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission in, or reconcile any inconsistencies in the Plan or the Confirmation Order, and to implement such action as may be necessary to carry out the purposes and effects of the Plan so long as such proceedings do not materially and adversely affect the treatment of holders of Claims under the Plan;

provided, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or applicable order of the Bankruptcy Court.

**11.2. Revocation or Withdrawal of the Plan.** The Debtor reserves the right to revoke or withdraw the Plan at any time and for any reason before the Confirmation Date. Without limiting the generality of the foregoing, the Debtor may withdraw the Plan in the event that any Class does not accept the Plan or if there is substantial opposition to the Plan from Clayton or any Lender notwithstanding such acceptance. If the Plan is withdrawn or revoked, then the Plan shall be deemed null and void, and nothing contained in the Plan or any Plan Documents shall be deemed a waiver of any Claims by or against the Debtor or any other Person in any further proceedings involving the Debtor.

## ARTICLE 12. ACCEPTANCE OR REJECTION OF THE PLAN

**12.1. Impaired Classes to Vote.** Each holder of a Claim or equity interest in an impaired Class shall be entitled to vote separately to accept or reject the Plan unless such holder is deemed to accept or reject the Plan.

**12.2. Acceptance by Class of Creditors.** An impaired Class of holders of Claims shall have accepted the Plan if the Plan is accepted by holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims of such Class that have voted to accept or reject the Plan.

## ARTICLE 13. MISCELLANEOUS

**13.1. Settlement of Objections after Effective Date.** From and after the Effective Date, the Debtor, in its capacity as estate representative, may litigate to Final Order, propose settlements of, or withdraw objections to, all pending or filed Disputed Claims and may settle or compromise any Disputed Claim without notice and a hearing and without approval of the Bankruptcy Court.

**13.2. Holding of, and Failure to Claim, Undeliverable Distributions.** All Distributions other than Distributions to the Lenders are to be made to the holder of each Allowed Claim by the Debtor as estate representative at the address of such holder listed on the Schedules or proof of claim filed by such holder at the time of such Distribution. Distributions to the Lenders are to be made by

tendering such Distributions to the Manager for the benefit of the Lenders. If any holder's Distribution is returned as undeliverable, no further Distributions to such holder shall be made unless and until the Debtor is notified of such holder's then current address, at which time all required Distributions shall be made to such holder. Undeliverable Distributions shall be held by the Debtor until such Distributions are claimed. All Claims for undeliverable Distributions must be made within ninety (90) days following a Distribution. After such date, all unclaimed Distributions shall be allocated pro rata to the members of the Class related to such Distribution notwithstanding any federal or state escheat laws to the contrary.

**13.3. Fractional Amounts**. Notwithstanding anything contained herein to the contrary, payments of fractions of dollars will not be made. Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest dollar (up or down), with half dollars being rounded down.

**13.4. Ex Parte Relief**. Upon *ex parte* motion by the Debtor after the Confirmation Date, the Bankruptcy Court may enter such other and further orders as may be necessary or appropriate to instruct and direct the Debtor and others, and to facilitate the Distributions contemplated in the Plan.

**13.5. Exculpation**. The Debtor, the Parent, the Manager, Clayton and its affiliates, and each member of the Steering Committee and their respective officers, directors, agents, managers, shareholders or attorneys shall not be liable for any actions or omissions taken or not taken in connection with or arising out of the administration of the Chapter 11 Case, pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct as determined by Final Order of the Bankruptcy Court.

**13.6. Binding Effect**. The Plan shall be binding on, and shall inure to the benefit of, the Debtor and the holders of all Claims and equity interests and their respective successors and assigns.

**13.7. Governing Law**. Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties and obligations of the Debtor, all Creditors and any other Person arising

under the Plan shall be governed by, and construed and enforced in accordance with, the internal

laws of the State of Nevada, without giving effect to Nevada's choice of law provisions.

**13.8. Modification of Payment Terms.** At any time after the Effective Date, the Debtor

may modify the treatment of any Allowed Claim or equity interest in any manner adverse to the

holder of such Claim or equity interest only with the prior written consent of the holder whose

Allowed Claim or equity interest treatment is being adversely affected.

**13.9. United States Trustee Fees.** The Parent shall pay all quarterly fees payable to the

U.S. Trustee after Confirmation in connection with the Chapter 11 Case, consistent with applicable

provisions of the Bankruptcy Code, Bankruptcy Rules, and 28 U.S.C. § 1930(a)(6).

**13.10. Computation of Time.** In computing any period of time prescribed or allowed by

the Plan, the day of the act, event, or default from which the designated period of time begins to run

shall not be included.  The last day of the period so computed shall be included unless it is a

Saturday, a Sunday, or a legal holiday, or, when the act to be done is the filing of a paper in the

Bankruptcy Court, a day on which weather or other conditions have made the clerk's office

inaccessible, in which event the period runs until the end of the next day which is not one of the

aforementioned days.

**13.11. Final Decree.** After the Estate is fully administered, the Parent shall file an

application for a Final Decree, and shall serve the application on the U.S. Trustee, together with a

proposed Final Decree.

**13.12. No Admissions.** AS TO CONTESTED MATTERS, ADVERSARY

PROCEEDINGS AND OTHER CAUSES OF ACTION OR THREATENED CAUSES OF

ACTIONS, THIS PLAN SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN

ADMISSION OF ANY FACT OR LIABILITY, STIPULATION, OR WAIVER, BUT RATHER

AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.  THIS PLAN SHALL NOT BE

ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE

CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, AND OTHER

LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, AND EQUITY

INTERESTS IN, THE DEBTOR, AS A DEBTOR AND DEBTOR-IN-POSSESSION IN THIS CHAPTER 11 CASE.

DEBTOR'S PLAN OF REORGANIZATION DATED
DECEMBER 1, 2010

1    IN WITNESS WHEREOF, the Debtor caused the Plan to be executed as of December 1,

2  2010.

3                                    C-SWDE348, LLC, a Nevada limited liability company
                                     By:   LEHM, LLC, its Manager
4

5                                    By:   _____
                                           John A. Ritter, its Manager
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEBTOR'S PLAN OF REORGANIZATION DATED
                                                                                       DECEMBER 1, 2010

# FULLY RESTATED AND AMENDED

## OPERATING AGREEMENT

### OF

_____, LLC

a Nevada limited liability company

---

THE INTERESTS IN THE COMPANY EVIDENCED BY THIS
AGREEMENT AND THE ARTICLES OF ORGANIZATION OF THE
COMPANY HAVE NOT BEEN REGISTERED WITH THE SECURITIES
AND EXCHANGE COMMISSION (OR UNDER THE SECURITIES LAWS
OF ANY STATE), BUT HAVE BEEN ISSUED PURSUANT TO THE
PRIVATE OFFERING EXEMPTION UNDER THE SECURITIES ACT OF
1933, AS AMENDED. ACCORDINGLY, THE SALE, TRANSFER, PLEDGE,
HYPOTHECATION, OR OTHER DISPOSITION OF ANY OF SAID
INTERESTS ARE RESTRICTED AND MAY NOT BE ACCOMPLISHED
EXCEPT IN ACCORDANCE WITH THIS AGREEMENT, AND AN
APPLICABLE REGISTRATION STATEMENT OR AN OPINION OF
COUNSEL FOR THE COMPANY THAT A REGISTRATION STATEMENT
IS UNNECESSARY.

---

<u>Table of Contents</u>

<u>Page</u>

ARTICLE 1
FORMATION AND PURPOSE OF LIMITED LIABILITY COMPANY

Section 1.1    Formation of Limited Liability Company ..................................................... 1

Section 1.2    Effective Date .......................................................................................... 1

Section 1.3    Articles of Organization ........................................................................... 1

Section 1.4    Name....................................................................................................... 1

Section 1.5    Office Where Records Are Maintained ...................................................... 2

Section 1.6    Registered Agent; Registered Office .......................................................... 2

Section 1.7    Purpose ................................................................................................... 2

ARTICLE 2
DEFINITIONS

Section 2.1    Affiliate.................................................................................................... 2

Section 2.2    Articles of Organization ........................................................................... 2

Section 2.3    Business Plan ........................................................................................... 2

Section 2.4    Capital Contribution................................................................................. 3

Section 2.5    Carry Costs .............................................................................................. 3

Section 2.6    Code........................................................................................................ 3

Section 2.7    Company Conditions ................................................................................ 3

Section 2.8    Company Property .................................................................................... 3

Section 2.9    Class B Member Obligations ..................................................................... 3

Section 2.10   Class B Member Upfront Payment ............................................................ 3

Section 2.11   Gross Asset Value .................................................................................... 4

Section 2.12   Manager................................................................................................... 4

Section 2.13   Member ................................................................................................... 5

Section 2.14   Membership Interest ................................................................................ 5

Section 2.15   Original Principal Loan Amount ............................................................... 5

Section 2.16   Project Budget .......................................................................................... 5

Section 2.17   Property ................................................................................................... 5

Section 2.18   Steering Committee ................................................................................. 5

i

Table of Contents

Page

Section 2.19    Units ............................................................................................................ 5

Section 2.20    Valuation Date .............................................................................................. 5

Section 2.21    Water Rights.................................................................................................. 5

Section 2.22    Work ............................................................................................................. 5

ARTICLE 3
MEMBERS AND MEMBERSHIP

Section 3.1    Members; Classes of Membership .............................................................. 6

Section 3.2    New Members ............................................................................................... 6

Section 3.3    Liability of Members .................................................................................... 6

Section 3.4    Indemnification ............................................................................................ 6

Section 3.5    Authorized Class A Membership Units ....................................................... 7

Section 3.6    Class B Membership ..................................................................................... 7

Section 3.7    Voting........................................................................................................... 7

Section 3.8    Meetings of Members ................................................................................... 9

Section 3.9    Tax Matters Member.................................................................................... 10

ARTICLE 4
CAPITALIZATION

Section 4.1    Initial Capital Contributions ...................................................................... 10

Section 4.2    Additional Capital Contributions................................................................ 10

Section 4.3    Failure of a Class A Member to Make an Additional Capital Contribution ............ 11

Section 4.4    Capital Shortfall Loans ............................................................................... 11

Section 4.5    Supplemental Interest and Costs................................................................. 11

Section 4.6    Capital Accounts ......................................................................................... 11

Section 4.7    Manager's Modification of Capital Accounts.............................................. 12

Section 4.8    Return of Contributions .............................................................................. 12

Section 4.9    Conventions for Calculating Capital Contribution Returns....................... 12

ARTICLE 5
PROFITS AND LOSSES; DISTRIBUTIONS

Section 5.1    Tax Status, Reports and Allocations ........................................................... 13

Section 5.2    Certain Gross Asset Value/Tax Differences .............................................. 14

Table of Contents

Page

Section 5.3    Minimum Gain and Income Offsets ................................................................ 14

Section 5.4    Net Cash from Operations and Net Capital Proceeds .................................. 17

Section 5.5    Allocations ................................................................................................... 17

Section 5.6    Tax Allocations: Code Section 704(c) .......................................................... 18

Section 5.7    Distributions to Members ............................................................................. 18

Section 5.8    Adjustments Among Paying and Non-Paying Members .............................. 20

Section 5.9    Changes in Membership Interests ............................................................... 20

Section 5.10   Persons Entitled to Distributions ................................................................. 20


ARTICLE 6
ACCOUNTING, RECORDS AND REPORTS

Section 6.1    Fiscal Year .................................................................................................. 20

Section 6.2    Accounting .................................................................................................. 20

Section 6.3    Company Books ........................................................................................... 21

Section 6.4    Reports to Members ..................................................................................... 21

Section 6.5    Capital Accounts .......................................................................................... 21

Section 6.6    Bank Accounts ............................................................................................. 21

Section 6.7    Title to Property ........................................................................................... 21


ARTICLE 7
BUSINESS OPERATIONS AND MANAGEMENT

Section 7.1    Management ................................................................................................. 21

Section 7.2    Manager ...................................................................................................... 22

Section 7.3    Steering Committee ..................................................................................... 22

Section 7.4    Delivery of Annual Reports .......................................................................... 23

Section 7.5    Company Budget .......................................................................................... 23

Section 7.6    Management Fee .......................................................................................... 24

Section 7.7    Compensation and Fees .............................................................................. 24

Section 7.8    Time Devoted to Business; Independent Activities ...................................... 24

Section 7.9    Limits on Powers ......................................................................................... 25

Section 7.10   Class B Member Obligations ....................................................................... 25

Section 7.11   Limited Role of Members ............................................................................. 26

Table of Contents

Page

Section 7.12    Transactions With Interested Parties ........................................................ 27
Section 7.13    Real Estate Brokerage Commissions ...................................................... 27

ARTICLE 8
TRANSFERS OF MEMBERSHIP INTERESTS

Section 8.1    Restrictions .............................................................................................. 27
Section 8.2    Sale to a Non-Member ............................................................................ 27
Section 8.3    Transferees; Charging Orders ................................................................. 28
Section 8.4    Distributions and Allocations with respect to Transferred Membership Interest .... 29
Section 8.5    Taxpayer Information .............................................................................. 29
Section 8.6    Admission of Additional Members ......................................................... 29
Section 8.7    Revocable Trust and Other Estate Planning Entities .............................. 30
Section 8.8    Restrictive Legend .................................................................................. 30

ARTICLE 9
TERM AND TERMINATION

Section 9.1    Duration ................................................................................................... 30
Section 9.2    Dissolution of Company .......................................................................... 30
Section 9.3    Winding up of the Company .................................................................... 30
Section 9.4    Termination of Company ......................................................................... 31

ARTICLE 10
REPRESENTATIONS AND WARRANTIES

Section 10.1    Representations and Warranties ............................................................ 31
Section 10.2    Restrictive Legend ................................................................................ 33

ARTICLE 11
MISCELLANEOUS

Section 11.1    Governing Law ..................................................................................... 34
Section 11.2    Amendments ......................................................................................... 34
Section 11.3    Confidentiality ...................................................................................... 34
Section 11.4    Defaults ................................................................................................. 35
Section 11.5    Notices .................................................................................................. 35
Section 11.6    Counsel to Company ............................................................................. 35

Table of Contents

                                                                                        Page

Section 11.7    Severability ..................................................................................... 35

Section 11.8    Entire Agreement ............................................................................ 36

Section 11.9    Binding Effect ................................................................................. 36

Section 11.10   Construction .................................................................................... 36

Section 11.11   Time ................................................................................................ 36

Section 11.12   Heading ........................................................................................... 36

Section 11.13   Incorporation by Reference ............................................................ 36

Section 11.14   Variation of Pronouns .................................................................... 36

Section 11.15   Waiver Of Action for Partition ...................................................... 36

Section 11.16   Counterpart Execution .................................................................... 36

Section 11.17   Further Documents .......................................................................... 36

Section 11.18   Attorneys' Fees ............................................................................... 36

Section 11.19   Legal Representation ....................................................................... 36

Section 11.20   Elections Made by Company ........................................................... 37

Section 11.21   Dispute Resolution .......................................................................... 37

THIS FULLY RESTATED AND AMENDED OPERATING AGREEMENT ("**Agreement**"), fully restates and amends the Operating Agreement dated as of the _____ day of _____, 2010, is made by and among the undersigned Manager and the Members initially designated in the Confirmation Order (as defined below).

WHEREAS, _____, LLC (the "**Company**") filed for protection under chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Code for the District of Nevada (the "**Bankruptcy Court**"); and

WHEREAS, the Bankruptcy Court confirmed a plan of reorganization for the Company pursuant to a final order duly entered in the Company's bankruptcy case (the "**Confirmation Order**"); and

WHEREAS, the Plan provides for and the Confirmation Order authorizes the Company to issue equity to the Members and to adopt this Operating Agreement; and

WHEREAS, the Members agree that, as provided in the Plan, this Operating Agreement is necessary and advisable to set out the agreement of the Members as to the conduct of business and the affairs of the Company, and desire to enter into such agreement, in form and content as set forth herein.

NOW, THEREFORE, the Members hereby agree as follows:

## ARTICLE 1
## FORMATION AND PURPOSE OF LIMITED LIABILITY COMPANY

Section 1.1    Formation of Limited Liability Company.  The Company shall be operated as a limited liability company pursuant to the provisions of Chapter 86 of the Nevada Revised Statutes ("**NRS**").  The rights and obligations of the Members in the operation of the Company as herein provided shall be conducted and construed in accordance with NRS Chapter 86.

Section 1.2    Effective Date.  The "**Effective Date**" of this Operating Agreement shall be the effective date of the Company's Plan of Reorganization as set forth in the Confirmation Order attached hereto as Exhibit "A".

Section 1.3    Articles of Organization.  The Articles of Organization for the Company have been or shall be filed in the Office of the Secretary of State of Nevada.  The Members further agree to acknowledge, file, record, and/or publish as necessary, such amendments to the Articles of Organization or to this Agreement as may be required by this Agreement or by law, and such other documents as may be appropriate to comply with the requirements of law for the formation, preservation, and/or operation of the Company.

Section 1.4    Name.  The Company's business shall be conducted solely under the name of _____, LLC or any fictitious name agreed upon by the Members, for which the appropriate certificate of fictitious name shall be filed with the appropriate government agency.

Section 1.5    Office Where Records Are Maintained.  The office and place of business of the Company, at which Company records must be maintained, is 3041 W. Horizon Ridge Parkway Suite 155, Henderson, Nevada, 89052, or at such other place in the State of Nevada as the Manager shall from time to time determine.

Section 1.6    Registered Agent; Registered Office.  The name and address of the Company's registered agent for service of process in Nevada is _____ *[Clayton affiliate]* 3041 W. Horizon Ridge Parkway Suite 155, Henderson, Nevada, 89052.  The foregoing address shall be the Company's registered office in the State of Nevada.  The Manager may from time to time change the Company's registered agent for service of process and registered office.

Section 1.7    Purpose.

(a)    The purpose of the Company is to acquire the Property, to own, hold for investment, finance, operate, and manage the Property, to sell the Property, and to exercise all of the rights and perform all of the obligations that relate to such activities all in substantial accordance with the Business Plan, and to engage in such other activities directly related to the foregoing business as may be necessary, advisable or appropriate.

(b)    It is the intent of all Members that the Company shall be taxed as a partnership, and the Company shall not enter into any business activity, take any action, or fail to take any required action, that would jeopardize taxation of the Company as a partnership.

## ARTICLE 2
## DEFINITIONS

The following words and phrases used in this Agreement shall have the following meanings:

Section 2.1    Affiliate.  **"Affiliate"** shall mean with respect to any person:  (a) any person directly or indirectly controlling, controlled by, or under common control with such person; (b) any officer, director, general partner, member, or trustee of such person; or (c) any person who is an officer, director, general partner, member, or trustee of any person described in clause (a) or (b) of this sentence.  For purposes of this definition, the terms "controlling," "controlled by," and "under common control with" shall mean the possession, whether direct or indirect, of the power to direct or cause the direction of the management and policies of a person or entity, whether through the ownership of voting securities, by contract, or otherwise, or the power to elect at least fifty percent (50%) of the directors, managers, members, or persons exercising similar authority with respect to such persons or entities.

Section 2.2    Articles of Organization.  **"Articles of Organization"** shall mean the articles of organization filed with the Secretary of State to form the Company pursuant to NRS § 86.151.

Section 2.3    Business Plan. **"Business Plan"** shall mean the proposed annual plan of the Company with respect to the ownership, preservation, operation, management, leasing and disposition of the Property, including an anticipated schedule for the critical milestones and any Work to be performed by the Class B Member to preserve and/or enhance the value of the