1
2
3
4
5
6
7

I. Scott Bogatz
Nevada Bar No. 3367
BOGATZ & ASSOCIATES, P.C.
3455 Cliff Shadows Parkway, Suite 110
Las Vegas, NV 89129
Telephone: (702) 776-7000
Facsimile: (702) 776-7800
Email: sbogatz@isbnv.com

Counsel for Debtor and Debtor-in-Possession,
C-SWDE348, LLC

Roberto J. Kampfner
California State Bar No. 179026
WHITE & CASE LLP
633 West Fifth Street, Suite 1900
Los Angeles, CA  90071
Telephone: (213) 620-7700
Facsimile: (213) 452-2329
Email: rkampfner@whitecase.com

Counsel for Southwest Desert Equities,
LLC, the parent of the Debtor

8

## UNITED STATES BANKRUPTCY COURT

9

## DISTRICT OF NEVADA

10
11
12
13

| In re | Case No.  [To Be Determined] |
|---|---|
| C-SWDE348, LLC,  a Nevada limited liability company, | Chapter 11 |
|  | **DEBTOR'S PLAN OF REORGANIZATION DATED DECEMBER 1, 2010** |
| Debtor and Debtor-in-Possession. | |

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

Page

ARTICLE 1.    DEFINITIONS AND RULES OF INTERPRETATION ........................................ 1
   1.1.    Additional Member Contributions.................................................................. 1
   1.2.    Administrative Claim ..................................................................................... 1
   1.3.    Administrative Claim Bar Date ...................................................................... 2
   1.4.    Allowed ......................................................................................................... 2
   1.5.    Bankruptcy Code ........................................................................................... 2
   1.6.    Bankruptcy Court ........................................................................................... 2
   1.7.    Bankruptcy Rules ........................................................................................... 2
   1.8.    Bar Date ......................................................................................................... 2
   1.9.    Business Day .................................................................................................. 2
   1.10.   Cash ............................................................................................................... 2
   1.11.   Chapter 11 Case ............................................................................................. 3
   1.12.   Claim ............................................................................................................. 3
   1.13.   Class............................................................................................................... 3
   1.14.   Class A Members Initial Contribution............................................................ 3
   1.15.   Class A Membership Interests ........................................................................ 3
   1.16.   Class B Membership Interests ........................................................................ 3
   1.17.   Class B Member Initial Contribution ............................................................. 3
   1.18.   Class B Member Upfront Payment.................................................................. 3
   1.19.   Clayton........................................................................................................... 3
   1.20.   Confirmation.................................................................................................. 3
   1.21.   Confirmation Date.......................................................................................... 3
   1.22.   Confirmation Hearing..................................................................................... 4
   1.23.   Confirmation Order ........................................................................................ 4
   1.24.   Creditor.......................................................................................................... 4
   1.25.   Debtor............................................................................................................ 4
   1.26.   Debtor Parties ................................................................................................ 4
   1.27.   Deed of Trust ................................................................................................. 4
   1.28.   Disputed......................................................................................................... 4
   1.29.   Distribution.................................................................................................... 4
   1.30.   Effective Date ................................................................................................ 4
   1.31.   Estate ............................................................................................................. 4
   1.32.   Final Decree................................................................................................... 4
   1.33.   Final Order..................................................................................................... 5
   1.34.   Governmental Unit ......................................................................................... 5
   1.35.   Governmental Unit Claims Bar Date............................................................... 5
   1.36.   Guarantee....................................................................................................... 5
   1.37.   Guarantor ....................................................................................................... 5
   1.38.   Lender............................................................................................................ 5
   1.39.   Lien ............................................................................................................... 5
   1.40.   Local Rules .................................................................................................... 5
   1.41.   Manager ......................................................................................................... 6
   1.42.   Management Fee............................................................................................. 6
   1.43.   New Operating Agreement ............................................................................. 6

DEBTOR'S PLAN OF REORGANIZATION DATED
DECEMBER 1, 2010

LOSANGELES 885255 v2

| | | |
|---|---|---|
| 1.44. | Note | 6 |
| 1.45. | Note Claims | 6 |
| 1.46. | Old Membership Units | 6 |
| 1.47. | Parent | 6 |
| 1.48. | Person | 6 |
| 1.49. | Petition Date | 6 |
| 1.50. | Plan | 6 |
| 1.51. | Plan Documents | 6 |
| 1.52. | Professionals | 7 |
| 1.53. | Professional Fees | 7 |
| 1.54. | Property | 7 |
| 1.55. | Property Tax Claims | 7 |
| 1.56. | Pro Rata Share | 7 |
| 1.57. | Releasing Lenders | 7 |
| 1.58. | Releasing Lender Parties | 7 |
| 1.59. | Schedules | 7 |
| 1.60. | Steering Committee | 7 |
| 1.61. | Supplemental Capital Contribution | 7 |
| 1.62. | Waterfall Increase Amount | 7 |
| ARTICLE 2. | TREATMENT OF UNCLASSIFIED CLAIMS | 8 |
| 2.1. | Unclassified Claims | 8 |
| 2.2. | Administrative Claims. | 8 |
| 2.3. | Claims for Professional Fees | 8 |
| 2.4. | Post-Effective Date Professional Fees | 9 |
| ARTICLE 3. | CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS | 9 |
| ARTICLE 4. | TREATMENT OF CLAIMS AND EQUITY INTERESTS | 9 |
| 4.1. | Class 1 – Property Tax Claims. | 9 |
| 4.2. | Class 2 – Note Claims. | 9 |
| 4.3. | Class 3 – Old Membership Units. | 10 |
| ARTICLE 5. | IMPLEMENTATION OF THE PLAN | 10 |
| 5.1. | Issuance of Class A Membership Interests | 10 |
| 5.2. | Adoption of Operating Agreement | 10 |
| 5.3. | Management | 11 |
| 5.4. | Release of Deed of Trust | 11 |
| 5.5. | Certain Tax Provisions | 12 |
| 5.6. | Issuance of New Membership Units | 12 |
| 5.7. | Post-confirmation matters | 12 |
| 5.8. | Release of Claims by Releasing Lenders | 13 |
| 5.9. | Release of Claims by Debtor Parties | 14 |
| 5.10. | Corporate Authority | 14 |
| ARTICLE 6. | CONDITIONS PRECEDENT | 15 |
| 6.1. | Condition to Confirmation. | 15 |
| 6.2. | Conditions to Effectiveness | 15 |
| 6.3. | Waiver of Conditions. | 15 |
| 6.4. | Failure of Conditions | 15 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ARTICLE 7.        [RESERVED] .................................................................................... 16

ARTICLE 8.        DISPUTED CLAIMS ......................................................................... 16
    8.1.        Objection Deadlines ............................................................................... 16
    8.2.        Prosecution of Disputed Claims ........................................................... 16
    8.3.        Entitlement to Plan Distributions upon Allowance ............................... 16

ARTICLE 9.        EFFECT OF CONFIRMATION ......................................................... 16
    9.1.        Revesting of Assets ............................................................................... 16
    9.2.        Discharge ............................................................................................... 17

ARTICLE 10.      RETENTION OF JURISDICTION ..................................................... 17

ARTICLE 11.      AMENDMENT AND WITHDRAWAL OF PLAN ............................ 19
    11.1.       Amendment of the Plan ......................................................................... 19
    11.2.       Revocation or Withdrawal of the Plan .................................................. 20

ARTICLE 12.      ACCEPTANCE OR REJECTION OF THE PLAN ............................ 20
    12.1.       Impaired Classes to Vote ...................................................................... 20
    12.2.       Acceptance by Class of Creditors ......................................................... 20

ARTICLE 13.      MISCELLANEOUS ........................................................................... 20
    13.1.       Settlement of Objections after Effective Date ...................................... 20
    13.2.       Holding of, and Failure to Claim, Undeliverable Distributions ............ 20
    13.3.       Fractional Amounts ............................................................................... 21
    13.4.       Ex Parte Relief ...................................................................................... 21
    13.5.       Exculpation ............................................................................................ 21
    13.6.       Binding Effect ....................................................................................... 21
    13.7.       Governing Law ...................................................................................... 21
    13.8.       Modification of Payment Terms ............................................................ 22
    13.9.       United States Trustee Fees .................................................................... 22
    13.10.      Computation of Time ............................................................................ 22
    13.11.      Final Decree ........................................................................................... 22
    13.12.      No Admissions ....................................................................................... 22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### PLAN OF REORGANIZATION

C-SWDE348, LLC, a Nevada limited liability company (the "Debtor"), the debtor and debtor-in-possession in the above-captioned Chapter 11 Case, hereby proposes the following plan of reorganization (the "Plan") for the resolution of the Debtor's outstanding Claims and equity interests.

*All holders of Claims against, and equity interests in, the Debtor are encouraged to read the Plan and the related solicitation materials in their entirety before voting to accept or reject the Plan.*

Subject to the restrictions on modifications set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, and those restrictions on modifications set forth in Section 11.1 of the Plan, the Debtor expressly reserves the right to alter, amend, or modify the Plan one or more times before its substantial consummation.

### ARTICLE 1.  DEFINITIONS AND RULES OF INTERPRETATION

For purposes of the Plan, all capitalized terms shall have the meanings ascribed to them in this Article 1 of the Plan.  Any term used in the Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, retains the meaning specified for such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.  Whenever the context requires, such terms include the plural as well as the singular, the masculine gender includes the feminine gender, and the feminine gender includes the masculine gender.

As used in the Plan, the following terms have the meanings specified below:

**1.1. Additional Member Contributions**.  Has the meaning set forth in the New Operating Agreement.

**1.2. Administrative Claim**.  A Claim for any cost or expense of administration of the Chapter 11 Case allowed under sections 503(b) or 507(b) of the Bankruptcy Code and entitled to priority under section 507(a)(2) of the Bankruptcy Code, including, without limitation: (a) fees payable under 28 U.S.C. § 1930; (b) actual and necessary costs and expenses incurred in the ordinary course of the Debtor's businesses; (c) actual and necessary costs and expenses of preserving

the Estate or administering the Chapter 11 Case; and (d) all Professional Fees to the extent Allowed by Final Order under sections 330, 331, or 503 of the Bankruptcy Code.

**1.3. Administrative Claim Bar Date**. The date that is thirty (30) days after the Effective Date.

**1.4. Allowed**. With reference to any Claim against or equity interest in the Debtor, (a) any Claim which has been listed by the Debtor in the Schedules, as such Schedules may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim or objection to Claim has been filed, (b) any Claim or equity interest allowed hereunder, (c) any Claim, proof of which was filed on or before the Bar Date, or, with respect to a Governmental Unit, before the Governmental Unit Claims Bar Date, or equity interest, which is not Disputed, (d) any Claim or equity interest that is compromised, settled or otherwise resolved pursuant to a Final Order of the Bankruptcy Court, or (e) any Claim or equity interest which, if Disputed, has been allowed by Final Order.

**1.5. Bankruptcy Code**. Title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended from time to time and as applicable to the Chapter 11 Case.

**1.6. Bankruptcy Court**. The United States Bankruptcy Court for the District of Nevada that will have jurisdiction over the Chapter 11 Case.

**1.7. Bankruptcy Rules**. Collectively, the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. § 2075 and any Local Rules, as applicable to the Chapter 11 Case.

**1.8. Bar Date**. The date established by order of the Bankruptcy Court as the last day for the filing of proofs of claim against the Debtor; <u>provided</u>, that the deadline for filing proofs of claim by a Governmental Unit shall be the Governmental Unit Claims Bar Date.

**1.9. Business Day**. Any day other than a Saturday, Sunday, or legal holiday, as defined in Bankruptcy Rule 9006(a).

**1.10. Cash**. Currency, certified checks, official checks, money orders, negotiable instruments, and wire transfers of immediately available funds.

**1.11. Chapter 11 Case**.  The case under Chapter 11 of the Bankruptcy Code in which the Debtor is a debtor and debtor-in-possession, pending before the Bankruptcy Court.

**1.12. Claim**.  A claim, as defined in section 101(5) of the Bankruptcy Code, against a Person or its property, including, without limitation: (a) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured arising at any time before the Effective Date; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**1.13. Class**.  A category of holders of Claims or equity interests that are substantially similar in nature to the Claims or equity interests of other holders placed in such category, as designated in Article 3 of the Plan.

**1.14. Class A Members Initial Contribution**.  An amount equal to the original principal amount of the Note.

**1.15. Class A Membership Interests**.  The membership interests in the reorganized Debtor to be issued to the Lenders pursuant to the Plan.

**1.16. Class B Membership Interests**.  The membership interests in the reorganized Debtor to be issued to the Parent pursuant to the Plan.

**1.17. Class B Member Initial Contribution**.  Has the meaning set forth in the New Operating Agreement.

**1.18. Class B Member Upfront Payment**.  Has the meaning set forth in the New Operating Agreement.

**1.19. Clayton**.  L.S.T. Investments, LLC, a Nevada limited liability company doing business as Clayton Mortgage & Investment.

**1.20. Confirmation**.  The entry of the Confirmation Order by the Bankruptcy Court.

**1.21. Confirmation Date**.  The date on which the Bankruptcy Court enters the Confirmation Order.

**1.22. Confirmation Hearing**. The hearing held by the Bankruptcy Court to consider Confirmation of the Plan.

**1.23. Confirmation Order**. The order of the Bankruptcy Court confirming the Plan in accordance with the Bankruptcy Code.

**1.24. Creditor**. Has the meaning set forth in section 101(10) of the Bankruptcy Code.

**1.25. Debtor**. Has the meaning set forth in the preamble to the Plan.

**1.26. Debtor Parties**. Has the meaning set forth in Section 5.8 of the Plan.

**1.27. Deed of Trust**. That certain Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated as of March 27, 2006 securing the Note and recorded in the official records of Clark County, Nevada as Instrument No. 0002928.

**1.28. Disputed**. With respect to Claims, any Claim: (a) that is listed in the Schedules as unliquidated, disputed, or contingent and as to which no proof of claim has been filed; or (b) as to which the Debtor or any other proper party-in-interest has interposed a timely objection or request for estimation, or has sought to equitably subordinate or otherwise limit recovery in accordance with the Bankruptcy Code and the Bankruptcy Rules, or which is otherwise disputed by the Debtor in accordance with applicable law and as to which such objection, request for estimation, or request for subordination has not been withdrawn or determined by a Final Order.

**1.29. Distribution**. A payment of Cash to the holder of an Allowed Claim pursuant to the Plan.

**1.30. Effective Date**. The later of: (a) the first Business Day that is at least fourteen (14) days after the Confirmation Date and on which no stay of the Confirmation Order is in effect; and (b) the Business Day on which all of the conditions set forth in Section 6.2 of the Plan have been satisfied or waived.

**1.31. Estate**. The estate created in the Debtor's Chapter 11 Case in accordance with section 541 of the Bankruptcy Code.

**1.32. Final Decree**. A final decree closing this Chapter 11 Case.

**1.33.  Final Order**.  An order or judgment of the Bankruptcy Court:  (a) as to which the time to appeal, petition for certiorari, move for retrial, or seek other review or reconsideration has expired and as to which no appeal, petition for certiorari, motion for retrial or other proceeding for review or reconsideration is pending; (b) as to which any right to appeal, to petition for certiorari, to move for retrial, or to seek other review or reconsideration has been waived in writing in form and substance satisfactory to the Debtor; or (c) as to which, if an appeal, writ of certiorari, retrial or other review or reconsideration has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed or from which such relief was sought or such court has denied such appeal or such relief and the time to take any further appeal, petition for certiorari, move for retrial or seek other review or reconsideration has expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order does not prevent such order from being a Final Order.

**1.34.  Governmental Unit**.  Has the meaning set forth in section 101(27) of the Bankruptcy Code.

**1.35.  Governmental Unit Claims Bar Date**.  The deadline for filing proofs of claim by a Governmental Unit.

**1.36.  Guarantee**.  The guarantee issued by the Guarantor in favor of the Lenders in connection with the Note.

**1.37.  Guarantor**.  John A. Ritter, an individual and Darrin D. Badger, an individual.

**1.38.  Lender**.  A holder of a beneficial interest in the Note.

**1.39.  Lien**.  A lien as defined in section 101(37) of the Bankruptcy Code, except a lien that has been avoided in accordance with sections 506, 544, 545, 546, 547, 548, 549, or 553 of the Bankruptcy Code.

**1.40.  Local Rules**.  The local rules of the United States Bankruptcy Court for the District of Nevada governing proceedings in this Chapter 11 Case.

**1.41. Manager**. The Person designated by Clayton to manage the reorganized Debtor pursuant to the terms of the New Operating Agreement.

**1.42. Management Fee.** Collectively, an annual fee payable by the Debtor to the Manger, on a quarterly basis, in an amount equal to .5% of the original principal amount of the Note.

**1.43. New Operating Agreement**. The operating agreement to govern the Debtor after the Effective Date substantially in the form attached hereto as Exhibit A.

**1.44. Note**. That certain promissory note dated as of March 27, 2006 in the original principal amount of $11,575,000 issued by Parent and assumed by the Debtor prior to the Petition Date and attached hereto as Exhibit B.

**1.45. Note Claims**. The Claims of the Lenders under or in connection with the Note, including, without limitation, any Claims in respect of principal, interest and fees.

**1.46. Old Membership Units**. The membership units in the Debtor issued prior to the confirmation of the Plan.

**1.47. Parent.** Southwest Desert Equities, LLC, a Nevada limited liability company.

**1.48. Person**. Any individual, corporation, partnership, limited liability company, joint venture, association, joint-stock company, trust, unincorporated association or organization, or other "person" as defined in section 101(41) of the Bankruptcy Code as well as any governmental agency, Governmental Unit or associated political subdivision.

**1.49. Petition Date**. The date upon the Debtor files a petition for relief under chapter 11 of the Bankruptcy Code.

**1.50. Plan**. This plan of reorganization, either in its present form or as it may be amended, supplemented or modified from time to time, including, without limitation, all of its annexed exhibits and schedules and the Plan Documents.

**1.51. Plan Documents**. The New Operating Agreement and all other material documents required to implement the provisions of the Plan.

**1.52.  Professionals**.  Those Persons employed in accordance with an order of the Bankruptcy Court under sections 327 or 1103 of the Bankruptcy Code and to be compensated for services under sections 327, 328, 329, 330, and 331 of the Bankruptcy Code.

**1.53.  Professional Fees**.  The Administrative Claims for compensation and reimbursement of expenses of Professionals submitted in accordance with sections 330 or 331 of the Bankruptcy Code, or any Administrative Claims Allowed by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

**1.54.  Property**.  All of the Debtor's right, title and interest of any nature in property of any kind as of the Confirmation Date, wherever located, as specified in section 541 of the Bankruptcy Code, including, without limitation, the real property identified by APN No. 125-03-001-002.

**1.55.  Property Tax Claims**.  Any Claims of a Governmental Unit for property taxes related to the Property, whether such liability is *in rem*, *in personam* or both.

**1.56.  Pro Rata Share**.  The proportion that an Allowed Claim bears to the aggregate amount of all Claims in a particular class, including, without limitation, Disputed Claims that have not been disallowed by a Final Order.

**1.57.  Releasing Lenders**.  Has the meaning set forth in Section 5.8.

**1.58.  Releasing Lender Parties**.  Has the meaning set forth in Section 5.8.

**1.59.  Schedules**.  The schedules of assets and liabilities, the list of holders of interests, and the statements of financial affairs filed by the Debtor under section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules, lists, and statements may have been or may be supplemented or amended from time to time.

**1.60.  Steering Committee.**  Has the meaning set forth in the New Operating Agreement.

**1.61.  Supplemental Capital Contribution**.  Has the meaning set forth in the New Operating Agreement.

**1.62.  Waterfall Increase Amount**.  An amount equal to the sum of the Class A Members Initial Contribution and an annual assessment equal to 1% of the Class A Members Initial Contribution, prorated monthly, from the Effective Date through the date of the sale of the Property.

## ARTICLE 2. TREATMENT OF UNCLASSIFIED CLAIMS

**2.1. Unclassified Claims.** As provided in section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, including, without limitation, Claims for Professional Fees are not classified for purposes of voting on, or receiving distributions under, the Plan. Holders of such Claims are not entitled to vote on the Plan. All such Claims instead are treated separately in accordance with this Article 2 and in accordance with the requirements set forth in section 1129(a)(9)(A) of the Bankruptcy Code.

**2.2. Administrative Claims.**

**2.2.1. Generally.** Each Administrative Claim other than a Claim for Professional Fees shall be paid in full in Cash by the Debtor on the later to occur of (a) the Effective Date; (b) the tenth (10th) day after such Administrative Claim is Allowed; and (c) such date as the holder of any such Administrative Claim and the Debtor may agree.

**2.2.2. Requests for Payment.** All requests for payment of Administrative Claims, other than requests for payment of Claims for Professional Fees, must be filed by the Administrative Claim Bar Date or the holders thereof shall be forever barred from asserting such Administrative Claims against the Debtor.

**2.3. Claims for Professional Fees.** Each Person seeking an award by the Bankruptcy Court of Professional Fees: (a) must file a final application for allowance of compensation for services rendered and reimbursement of expenses incurred through the Effective Date within thirty (30) days of the Effective Date; and (b) if the Bankruptcy Court grants such an award, must be paid in full in Cash by the Debtor with funds contributed by the Parent in such amounts as are allowed by the Bankruptcy Court as soon thereafter as practicable. All final applications for allowance and disbursement of Professional Fees must be in compliance with all of the requirements of the Bankruptcy Code, the Bankruptcy Rules and any applicable guidelines and with all of the terms and conditions set forth in any applicable order of the Bankruptcy Court, including, without limitation, the Confirmation Order, and all other orders governing payment of Professional Fees.

**2.4. Post-Effective Date Professional Fees.** All Professional Fees for services rendered in connection with the Chapter 11 Case and the Plan after the Effective Date may be paid by the Debtor upon receipt of an invoice for such services, or on such other terms to which the Debtor and the relevant Professional may agree, without the need for further Bankruptcy Court authorization or entry of a Final Order.

## ARTICLE 3.  CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

In accordance with section 1123(a)(1) of the Bankruptcy Code, all Claims of Creditors (except those Claims receiving treatment as set forth in Article 2) and holders of equity interests, including holders of Old Membership Units are placed in the Classes described below for all purposes, including, without limitation, voting on, Confirmation of, and Distribution under, the Plan:

| Class 1 | Property Tax Claims | Unimpaired, deemed to accept |
| Class 2 | Note Claims | Impaired, entitled to vote |
| Class 3 | Old Membership Units | Impaired, entitled to vote |

## ARTICLE 4.  TREATMENT OF CLAIMS AND EQUITY INTERESTS

**4.1. Class 1 – Property Tax Claims.**

**4.1.1. Impairment and Voting.** Class 1 consists of Property Tax Claims. Property Tax Claims are unimpaired by the Plan; consequently, the holders of Property Tax Claims are deemed to have accepted the Plan.

**4.1.2. Treatment.** On the Effective Date, each holder of an Allowed Property Tax Claim shall receive a single Cash payment equal to the sum of (a) its Allowed Property Tax Claim and (b) all accrued postpetition interest calculated at the rate required by applicable nonbankruptcy law.

**4.2. Class 2 – Note Claims.**

**4.2.1. Impairment and Voting.** Class 2 consists of the Note Claims. Note Claims are impaired by the Plan; consequently, the holders of Note Claims are entitled to vote on the Plan.

**4.2.2. Treatment.** On the Effective Date, each holder of a Note Claim shall receive, in complete satisfaction of such Claim and any Liens under the Deed of Trust securing such Claim,

its Pro Rata Share of 100% of the Class A Membership Interests as more particularly set forth in the New Operating Agreement. Such Class A Membership Interests shall have all of the rights and obligations set forth in the New Operating Agreement.

### 4.3. Class 3 – Old Membership Units.

**4.3.1. Impairment and Voting.** Class 3 consists of the Old Membership Units. Old Membership Units are impaired by the Plan; consequently, the holders of Old Membership Units are entitled to vote on the Plan.

**4.3.2. Treatment.** On the Effective Date, and upon the payment of the Class B Member Upfront Payment, the Old Membership Units shall be exchanged for the Class B Membership Interests. Such Class B Membership Interests shall have all of the rights and obligations set forth in the New Operating Agreement.

### ARTICLE 5. IMPLEMENTATION OF THE PLAN

**5.1. Issuance of Class A Membership Interests.** On the Effective Date, the Old Membership Units shall be cancelled and the Debtor shall issue, without further order of the Bankruptcy Court or need for corporate approval, the Class A Membership Interests and the Class B Membership Interests as provided for in the Plan and the New Operating Agreement.

**5.2. Adoption of Operating Agreement.** On and after the Effective Date, and without further order of the Bankruptcy Court or need for corporate approval, the Debtor shall be governed by the New Operating Agreement and such agreement shall supersede all other operating agreements in respect of the Debtor. The New Operating Agreement shall provide at all times that distributions from the reorganized Debtor to its members, including the holders of Class A Membership Interests and Class B Membership Interests, shall be paid first to the makers of Supplemental Capital Contributions in an amount equal to all unreturned Supplemental Capital Contributions together with simple interest at a rate of 8% per annum until all such unreturned Supplemental Capital Contributions (together with accrued interest) shall have been returned in full, second, ratably, in proportion to the amount then due, to the makers of Additional Member Contributions and the Parent in the amount of all unreturned Additional Member Contributions and unreturned Class B Member

1    Initial Contributions together with simple interest of 8% per annum until all unreturned Additional

2    Member Contributions and the Class B Member Initial Contributions are returned in full, <u>third</u>, until

3    the holders of Class A Membership Interests have received an amount equal to the Waterfall

4    Increase Amount, (a) 90% to the holders of Class A Membership Interests on a pro rata basis;

5    <u>provided</u> that the pro rata distributions of the Class A members shall be adjusted so that the makers

6    of Supplemental Capital Contributions (including the Parent in its capacity as the Class B member if

7    any Supplemental Capital Contributions have been made by the Parent in such capacity) receive an

8    additional 12% annual return at the expense of the Class A members whose failure to make

9    Additional Member Contributions necessitated the making of Supplemental Capital Contributions,

10   and (b) 10% to the Parent in its capacity as the Class B member, and, <u>fourth</u>, 70% to the holders of

11   Class A Membership Interests on a pro rata basis and 30% to the Parent in its capacity as the Class B

12   member.

13       **5.3. Management**.  On and after the Effective Date, the Debtor shall be managed as provided

14   in the New Operating Agreement.  Further, without limiting the generality of the foregoing, the

15   Manager shall be entitled to receive the Management Fee and all other compensation and

16   reimbursements described in the New Operating Agreement.  The entry of the Confirmation Order

17   shall ratify and approve all actions taken by the Debtor prior to the date thereof.

18       **5.4. Release of Deed of Trust**.  On the Effective Date, all Liens granted under the Deed of

19   Trust shall be deemed extinguished and satisfied as of the Effective Date without further order of the

20   Bankruptcy Court.  Recordation of the Confirmation Order (or a supplemental order implementing

21   the Plan by evidencing the release of the Deed of Trust) shall be deemed to constitute a full

22   reconveyance of the Deed of Trust without further order of Bankruptcy Court.  Without limiting the

23   generality of the foregoing, the entry of the Confirmation Order shall constitute a direction for

24   Clayton, in its capacity as servicer for the Lenders, to deliver the Deed of Trust, along with any

25   reconveyances reasonably requested by the Debtor, to the Debtor to evidence the automatic

26   cancellation and satisfaction of the Deed of Trust as of the Effective Date.

27

28

**5.5. Certain Tax Provisions**. Pursuant to section 1146(a) of the Bankruptcy Code, the making or delivery of an instrument of transfer as part of a transaction authorized by the Plan, including, without limitation, any transfers of Property shall not be taxed under any law imposing a stamp tax or similar tax.

**5.6. Issuance of New Membership Units**. Pursuant to section 1145(a) of the Bankruptcy Code, section 5 of the Securities Act of 1933 and any state or local law requiring registration for the offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security shall not apply to the issuance of the Class A Membership Interests and the Class B Membership Interests. Notwithstanding the foregoing, the Class A Membership Interests and Class B Membership Interests, once issued, shall not be publically traded and may only be transferred on the terms and conditions set forth in the New Operating Agreement. In addition, pursuant to section 1125(e) of the Bankruptcy Code, any Persons that solicit the acceptance or rejection of the Plan, including, the Parent, the Debtor and the Manager, in good faith and in compliance with the Bankruptcy Code, or that participate, in good faith and in compliance with the applicable provisions of this title, in the offer, issuance, sale or purchase of a security, offered or sold under the Plan, shall not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing solicitation of acceptance or rejection of a plan or the offer, issuance, sale or purchase of securities.

**5.7. Post-confirmation matters**.

**5.7.1. Responsibilities of the Reorganized Debtor**. On and after the Effective Date, without need for further action by the members or managers of the Debtor, and without further order of the Bankruptcy Court, the Debtor shall be appointed estate representative under section 1123 of the Bankruptcy Code and shall be solely responsible for and shall have authority to: (a) make all Distributions required to be made on or after the Effective Date to the holders of Allowed Claims, including Distributions of Class A Membership Interests and Class B Membership Interests; (b) settle, resolve and object to Claims, including Note Claims; (c) retain, employ and utilize such Professionals as may be necessary without further approval of the Bankruptcy Court; and (d) do all

1  things necessary and appropriate to fulfill the duties and obligations of the Debtor under the Plan, the

2  Confirmation Order, the Bankruptcy Code and the Bankruptcy Rules.  The Debtor, in its capacity as

3  estate representative, shall comply with all withholding and reporting requirements imposed upon it

4  by any Governmental Unit under applicable law and all Distributions shall be subject to such

5  withholding and reporting requirements, if any.

6         **5.7.2.  Responsibilities of the Parent**.  On and after the Effective Date, and without

7  further order of the Bankruptcy Court, the Parent shall be appointed estate representative under

8  section 1123 of the Bankruptcy Code and shall be solely responsible for and shall have authority to:

9  (a) pay all fees payable under 28 U.S.C. § 1930; (b) file any post-Confirmation reports required by

10  the Bankruptcy Code or the Bankruptcy Court and (c) move for the entry of a Final Decree and

11  prepare and file any pleadings as may be required by the Bankruptcy Court in connection with the

12  Final Decree and the closing of the Chapter 11 Case.

13         **5.8.  Release of Claims by Releasing Lenders**.  On the Effective Date, each of the Lenders

14  voting in favor of the Plan (each a "Releasing Lender") and Clayton, on behalf of itself and each of

15  its agents, successors, assigns and representatives of any kind (collectively, the "Releasing Lender

16  Parties"), shall and hereby does voluntarily forever release and discharge the Debtor, any other

17  obligors under the Note, the Guarantor, any obligors under any other guarantees of the Note (if any)

18  and each of such Person's respective agents, successors, assigns and representatives of any kind

19  (collectively, the "Debtor Parties") from any and all claims, demands, causes of action and rights of

20  every kind, nature or character arising or existing on or before the Effective Date arising out of or in

21  any way related to the Note, the Guarantee, any other guarantees of the Note or the Property;

22  whether absolute, inchoate or contingent; whether determined or undetermined, known or unknown,

23  proven or unproven; whether held individually, jointly, or jointly and severally; whether arising

24  directly, indirectly, derivatively, or by way of any legal or equitable right of subrogation,

25  contribution, indemnity, estoppel, marshalling of assets or otherwise; whether for compensation,

26  relief, protection, punishment or any other remedy or result of any kind, character or nature; whether

27  based upon any intentional or negligent conduct, strict liability, any tort of any kind, upon any

28

breach of any contract or upon any other grounds or upon any other theory whatsoever; whether

asserted or subject to assertion by complaint, cross-complaint, counterclaim, affirmative defense, or

other pleading, by motion, by notice or otherwise; whether asserted or subject to assertion in any

jurisdiction, in any court or other forum or with any federal, state, county, municipal or other

governmental authority, agency or official; and whether arising at law, in equity or otherwise.

    **5.9. Release of Claims by Debtor Parties**. On the Effective Date, each Debtor Party

hereby forever releases and discharges each Releasing Lender Party from any and all claims,

demands, causes of action and rights of every kind, nature or character arising or existing on or

before the Effective Date arising out of or in any way related to the Note, the Guarantee, any other

guarantees of the Note (if any) or the Property; whether absolute, inchoate or contingent; whether

determined or undetermined, known or unknown, proven or unproven; whether held individually,

jointly, or jointly and severally; whether arising directly, indirectly, derivatively, or by way of any

legal or equitable right of subrogation, contribution, indemnity, estoppel, marshalling of assets or

otherwise; whether for compensation, relief, protection, punishment or any other remedy or result of

any kind, character or nature; whether based upon any intentional or negligent conduct, strict

liability, any tort of any kind, upon any breach of any contract or upon any other grounds or upon

any other theory whatsoever; whether asserted or subject to assertion by complaint, cross-complaint,

counterclaim, affirmative defense, or other pleading, by motion, by notice or otherwise; whether

asserted or subject to assertion in any jurisdiction, in any court or other forum or with any federal,

state, county, municipal or other governmental authority, agency or official; and whether arising at

law, in equity or otherwise.

    **5.10. Corporate Authority.** The entry of the Confirmation Order shall constitute

authorization for the Debtor to take or cause to be taken all corporate actions necessary or

appropriate to implement all provisions of, and consummate, the Plan, and the Plan Documents prior

to, on and after the Effective Date and all such actions taken or caused to be taken shall be deemed

to have been authorized and approved by the Bankruptcy Court without further approval, act or

action under any applicable law, order, rule, or regulation, including, without limitation, any action

required by holders of Old Membership Units, including, among other things, the issuance of Class A Membership Interests and Class B Membership Interests, and the adoption of the New Operating Agreement under the Plan.

## ARTICLE 6. CONDITIONS PRECEDENT

**6.1. Condition to Confirmation.** It is a condition precedent to Confirmation that the Bankruptcy Court enter a Confirmation Order in form and substance reasonably acceptable to the Debtor and Clayton.

**6.2. Conditions to Effectiveness.** The following are conditions precedent to the occurrence of the Effective Date:

          (a)    the Confirmation Date shall have occurred;

          (b)    the Confirmation Order shall have been entered and shall be a Final Order;

          (c)    each of the "Company Conditions" set forth in the New Operating Agreement shall have been satisfied;

          (d)    no request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code shall have been made, or, if made, remain pending;

          (e)    the Debtor shall have received all approvals necessary or appropriate to substantially consummate the Plan; and

          (f)    each and every Plan Document shall be fully executed and in form and substance reasonably satisfactory to the Debtor and Clayton.

**6.3. Waiver of Conditions.** Conditions to Confirmation and the occurrence of the Effective Date may be waived, in whole or in part, by the Debtor at any time with the consent of Clayton or an order of the Bankruptcy Code.

**6.4. Failure of Conditions.** If the Effective Date shall not occur, the Debtor and all other parties in interest shall retain all their rights and remedies as if the Plan had not been proposed. Among other things, the Plan shall be null and void and nothing contained in the Plan shall: (a) constitute a waiver of any Claims against or equity interests in the Debtor or (b) prejudice in any manner the rights of the Debtor or the Lenders.

## ARTICLE 7. [RESERVED]

## ARTICLE 8. DISPUTED CLAIMS

**8.1. Objection Deadlines.** Any objections to Administrative Claims and all other Claims made after the Effective Date shall be filed and served by the Debtor on the holders of such Administrative Claims and Claims not later than sixty (60) days after the Effective Date or such later date as may be approved by the Bankruptcy Court via *ex parte* request.

**8.2. Prosecution of Disputed Claims.** The Debtor, as estate representative, may object to the allowance of Claims and Administrative Claims filed with the Bankruptcy Court with respect to which liability is disputed in whole or in part. All objections that are filed and prosecuted as provided herein shall be litigated to Final Order or compromised and settled in accordance with Section 13.1.

**8.3. Entitlement to Plan Distributions upon Allowance.** Notwithstanding any other provision of the Plan, no Distribution shall be made with respect to any Claim to the extent it is a Disputed Claim, unless and until such Disputed Claim becomes an Allowed Claim. When a Claim that is not an Allowed Claim as of the Effective Date becomes an Allowed Claim (regardless of when), the holder of such Allowed Claim shall thereupon become entitled to receive Distributions in respect of such Claim the same as though such Claim had been an Allowed Claim on the Effective Date.

## ARTICLE 9. EFFECT OF CONFIRMATION

**9.1. Revesting of Assets.** Subject to the provisions of the Plan and the Confirmation Order, the property of the Estate, including, without limitation, the Property, shall vest in the Debtor on the Effective Date. As of the Effective Date, all such property, including, without limitation, the Property, shall be free and clear of all Claims, Liens and equity interests, including, without limitation, any claims arising from the Note, any Liens arising from the Deed of Trust and the Old Membership Units to the fullest extent permitted by section 1141(c) of the Bankruptcy Code. From and after the Effective Date, the Debtor shall be free of any restriction imposed by the Bankruptcy

1 | Court, the Bankruptcy Code and the Bankruptcy Rules, other than the obligations set forth in the

2 | Plan, or the Confirmation Order.

3 | **9.2. Discharge**. Except as provided in the Plan or the Confirmation Order, the rights

4 | afforded under the Plan and the treatment of Claims and equity interests under the Plan are in

5 | exchange for and in complete satisfaction, discharge, and release of, all Claims. Except as provided

6 | in the Plan or the Confirmation Order, Confirmation discharges the Debtor and the reorganized

7 | Debtor from all Claims or other debts that arose before the Effective Date, and all debts of the kind

8 | specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not: (a) a proof of

9 | claim based on such debt is filed or deemed filed under Section 501 of the Bankruptcy Code; (b) a

10 | Claim based on such debt is Allowed under Section 502 of the Bankruptcy Code; or (c) the holder of

11 | a Claim based on such debt has accepted the Plan.

12 | **ARTICLE 10. RETENTION OF JURISDICTION**

13 | Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective

14 | Date, the Bankruptcy Court shall retain and have all authority and jurisdiction as is allowed under

15 | the Bankruptcy Code and other applicable law to enforce the provisions, purposes, and intent of the

16 | Plan including, without limitation, matters or proceedings that relate to:

17 | (a) allowance, disallowance, determination, liquidation, classification, estimation,

18 | or establishment of the priority or secured or unsecured status of any Claim, including, without

19 | limitation, the resolution of any request for payment of any Administrative Claim and the resolution

20 | of any and all objections to the allowance or priority of Claims;

21 | (b) requests for payment of Claims entitled to priority under section 507(a) of the

22 | Bankruptcy Code, including, without limitation, compensation and reimbursement of expenses for

23 | Professionals to the extent Bankruptcy Court approval therefore is required under the Plan or the

24 | Confirmation Order;

25 | (c) the title, rights or interests of the Debtor in any property, including, without

26 | limitation, the Property and the recovery of all assets and property of the Estate wherever located;

27

28

(d)     any right, power, action, or duty of the Debtor, the Parent, Clayton or the Lenders under the Plan;

(e)     any determination or estimation necessary or appropriate under section 505 of the Bankruptcy Code or other determination or estimation relating to tax returns filed or to be filed by the Debtor for periods through the end of the fiscal year in which the Effective Date occurs, including, without limitation, the determination of the amount of taxes, net operating losses, tax attributes, tax benefits, tax refunds, and related matters of the Debtor;

(f)     ensuring that Distributions to holders of Allowed Claims are accomplished in accordance with the Plan;

(g)     resolution of controversies and disputes, including, without limitation, the correction of any mistake, defect, or omission regarding consummation, interpretation or enforcement of the Plan, the Confirmation Order, and any agreements referred to in the Plan or executed in contemplation of or to implement the Plan;

(h)     resolution of any motions, adversary proceedings, contested or litigated matters, and any other matters involving the Debtor that may be pending on the Effective Date;

(i)     entry of such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan;

(j)     modification of the Plan before or after the Effective Date under section 1127 of the Bankruptcy Code or any contract, instrument, release, or other agreement or document created in connection with the Plan; or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, or any contract, instrument, release, or other agreement or document created in connection with the Plan in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code;

(k)     the entry of an order including injunctions necessary to enforce the title, rights, and powers of the Debtor and the purposes and intent of the Plan, and to impose such

limitations, restrictions, terms and conditions of such title, rights and powers as the Bankruptcy Court may deem necessary;

(l)      implementation of the provisions of the Plan and entry of such orders (i) in aid of Confirmation of the Plan, including, without limitation, appropriate orders to protect the Debtor from actions by holders of Claims, or (ii) as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

(m)      determination of any other matters that (i) may arise in connection with or relate to the Plan, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Confirmation Order except as otherwise provided in the Plan, or (ii) are otherwise provided under the Bankruptcy Code or other applicable law; and

(n)      entry of a Final Decree closing the Chapter 11 Case, including, without limitation, provisions for injunctive relief as may be equitable, consistent with Bankruptcy Rule 3022 and for retention of jurisdiction for the Bankruptcy Court for purposes of this Article 10. Notwithstanding anything set forth in this Article 10, nothing in the Plan or the Confirmation Order shall provide the Bankruptcy Court with any jurisdiction to determine the rights of the Debtor, the Parent, the Guarantor or any of the Lenders under or in connection with NRS §645B.340.

### ARTICLE 11. AMENDMENT AND WITHDRAWAL OF PLAN

**11.1. Amendment of the Plan**. At any time before the Confirmation Date, the Debtor may alter, amend, or modify the Plan under section 1127(a) of the Bankruptcy Code; provided that the Debtor may not materially modify the treatment of any Class that has accepted the Plan without the consent of such Class.  After the Confirmation Date and before substantial consummation of the Plan as defined in section 1101(2) of the Bankruptcy Code, the Debtor may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission in, or reconcile any inconsistencies in the Plan or the Confirmation Order, and to implement such action as may be necessary to carry out the purposes and effects of the Plan so long as such proceedings do not materially and adversely affect the treatment of holders of Claims under the Plan;

provided, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or applicable order of the Bankruptcy Court.

**11.2. Revocation or Withdrawal of the Plan.** The Debtor reserves the right to revoke or withdraw the Plan at any time and for any reason before the Confirmation Date. Without limiting the generality of the foregoing, the Debtor may withdraw the Plan in the event that any Class does not accept the Plan or if there is substantial opposition to the Plan from Clayton or any Lender notwithstanding such acceptance. If the Plan is withdrawn or revoked, then the Plan shall be deemed null and void, and nothing contained in the Plan or any Plan Documents shall be deemed a waiver of any Claims by or against the Debtor or any other Person in any further proceedings involving the Debtor.

## ARTICLE 12. ACCEPTANCE OR REJECTION OF THE PLAN

**12.1. Impaired Classes to Vote.** Each holder of a Claim or equity interest in an impaired Class shall be entitled to vote separately to accept or reject the Plan unless such holder is deemed to accept or reject the Plan.

**12.2. Acceptance by Class of Creditors.** An impaired Class of holders of Claims shall have accepted the Plan if the Plan is accepted by holders of at least two-thirds in dollar amount and more than one-half in number of the Allowed Claims of such Class that have voted to accept or reject the Plan.

## ARTICLE 13. MISCELLANEOUS

**13.1. Settlement of Objections after Effective Date.** From and after the Effective Date, the Debtor, in its capacity as estate representative, may litigate to Final Order, propose settlements of, or withdraw objections to, all pending or filed Disputed Claims and may settle or compromise any Disputed Claim without notice and a hearing and without approval of the Bankruptcy Court.

**13.2. Holding of, and Failure to Claim, Undeliverable Distributions.** All Distributions other than Distributions to the Lenders are to be made to the holder of each Allowed Claim by the Debtor as estate representative at the address of such holder listed on the Schedules or proof of claim filed by such holder at the time of such Distribution. Distributions to the Lenders are to be made by

tendering such Distributions to the Manager for the benefit of the Lenders.  If any holder's Distribution is returned as undeliverable, no further Distributions to such holder shall be made unless and until the Debtor is notified of such holder's then current address, at which time all required Distributions shall be made to such holder.  Undeliverable Distributions shall be held by the Debtor until such Distributions are claimed.  All Claims for undeliverable Distributions must be made within ninety (90) days following a Distribution.  After such date, all unclaimed Distributions shall be allocated pro rata to the members of the Class related to such Distribution notwithstanding any federal or state escheat laws to the contrary.

**13.3.  Fractional Amounts**.  Notwithstanding anything contained herein to the contrary, payments of fractions of dollars will not be made.  Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest dollar (up or down), with half dollars being rounded down.

**13.4.  Ex Parte Relief**.  Upon *ex parte* motion by the Debtor after the Confirmation Date, the Bankruptcy Court may enter such other and further orders as may be necessary or appropriate to instruct and direct the Debtor and others, and to facilitate the Distributions contemplated in the Plan.

**13.5.  Exculpation**.  The Debtor, the Parent, the Manager, Clayton and its affiliates, and each member of the Steering Committee and their respective officers, directors, agents, managers, shareholders or attorneys shall not be liable for any actions or omissions taken or not taken in connection with or arising out of the administration of the Chapter 11 Case, pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct as determined by Final Order of the Bankruptcy Court.

**13.6.  Binding Effect**.  The Plan shall be binding on, and shall inure to the benefit of, the Debtor and the holders of all Claims and equity interests and their respective successors and assigns.

**13.7.  Governing Law**.  Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties and obligations of the Debtor, all Creditors and any other Person arising

under the Plan shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Nevada, without giving effect to Nevada's choice of law provisions.

**13.8. Modification of Payment Terms.** At any time after the Effective Date, the Debtor may modify the treatment of any Allowed Claim or equity interest in any manner adverse to the holder of such Claim or equity interest only with the prior written consent of the holder whose Allowed Claim or equity interest treatment is being adversely affected.

**13.9. United States Trustee Fees.** The Parent shall pay all quarterly fees payable to the U.S. Trustee after Confirmation in connection with the Chapter 11 Case, consistent with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and 28 U.S.C. § 1930(a)(6).

**13.10. Computation of Time.** In computing any period of time prescribed or allowed by the Plan, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included unless it is a Saturday, a Sunday, or a legal holiday, or, when the act to be done is the filing of a paper in the Bankruptcy Court, a day on which weather or other conditions have made the clerk's office inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days.

**13.11. Final Decree.** After the Estate is fully administered, the Parent shall file an application for a Final Decree, and shall serve the application on the U.S. Trustee, together with a proposed Final Decree.

**13.12. No Admissions.** AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER CAUSES OF ACTION OR THREATENED CAUSES OF ACTIONS, THIS PLAN SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION, OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS PLAN SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, AND OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, AND EQUITY

INTERESTS IN, THE DEBTOR, AS A DEBTOR AND DEBTOR-IN-POSSESSION IN THIS

CHAPTER 11 CASE.

DEBTOR'S PLAN OF REORGANIZATION DATED
DECEMBER 1, 2010

IN WITNESS WHEREOF, the Debtor caused the Plan to be executed as of December 1, 2010.

C-SWDE348, LLC, a Nevada limited liability company
By:    LEHM, LLC, its Manager

By: _____
        John A. Ritter, its Manager

# EXHIBIT A

# EXHIBIT A

# FULLY RESTATED AND AMENDED

## OPERATING AGREEMENT

### OF

**_____, LLC**
a Nevada limited liability company

---

THE INTERESTS IN THE COMPANY EVIDENCED BY THIS
AGREEMENT AND THE ARTICLES OF ORGANIZATION OF THE
COMPANY HAVE NOT BEEN REGISTERED WITH THE SECURITIES
AND EXCHANGE COMMISSION (OR UNDER THE SECURITIES LAWS
OF ANY STATE), BUT HAVE BEEN ISSUED PURSUANT TO THE
PRIVATE OFFERING EXEMPTION UNDER THE SECURITIES ACT OF
1933, AS AMENDED. ACCORDINGLY, THE SALE, TRANSFER, PLEDGE,
HYPOTHECATION, OR OTHER DISPOSITION OF ANY OF SAID
INTERESTS ARE RESTRICTED AND MAY NOT BE ACCOMPLISHED
EXCEPT IN ACCORDANCE WITH THIS AGREEMENT, AND AN
APPLICABLE REGISTRATION STATEMENT OR AN OPINION OF
COUNSEL FOR THE COMPANY THAT A REGISTRATION STATEMENT
IS UNNECESSARY.

---

<u>Table of Contents</u>

<u>Page</u>

## ARTICLE 1
### FORMATION AND PURPOSE OF LIMITED LIABILITY COMPANY

Section 1.1    Formation of Limited Liability Company ................................................................. 1

Section 1.2    Effective Date ................................................................................................................. 1

Section 1.3    Articles of Organization ............................................................................................... 1

Section 1.4    Name ................................................................................................................................ 1

Section 1.5    Office Where Records Are Maintained ...................................................................... 2

Section 1.6    Registered Agent; Registered Office .......................................................................... 2

Section 1.7    Purpose ........................................................................................................................... 2

## ARTICLE 2
### DEFINITIONS

Section 2.1    Affiliate ........................................................................................................................... 2

Section 2.2    Articles of Organization ............................................................................................... 2

Section 2.3    Business Plan .................................................................................................................. 2

Section 2.4    Capital Contribution ..................................................................................................... 3

Section 2.5    Carry Costs ..................................................................................................................... 3

Section 2.6    Code ................................................................................................................................. 3

Section 2.7    Company Conditions ..................................................................................................... 3

Section 2.8    Company Property ......................................................................................................... 3

Section 2.9    Class B Member Obligations ........................................................................................ 3

Section 2.10   Class B Member Upfront Payment ............................................................................. 3

Section 2.11   Gross Asset Value ......................................................................................................... 4

Section 2.12   Manager .......................................................................................................................... 4

Section 2.13   Member ........................................................................................................................... 5

Section 2.14   Membership Interest ..................................................................................................... 5

Section 2.15   Original Principal Loan Amount ................................................................................ 5

Section 2.16   Project Budget ............................................................................................................... 5

Section 2.17   Property .......................................................................................................................... 5

Section 2.18   Steering Committee ....................................................................................................... 5

i

Table of Contents

Page

Section 2.19   Units ......................................................................................................... 5

Section 2.20   Valuation Date ......................................................................................... 5

Section 2.21   Water Rights............................................................................................. 5

Section 2.22   Work ........................................................................................................ 5

ARTICLE 3
MEMBERS AND MEMBERSHIP

Section 3.1    Members; Classes of Membership ........................................................... 6

Section 3.2    New Members ........................................................................................... 6

Section 3.3    Liability of Members ............................................................................... 6

Section 3.4    Indemnification ........................................................................................ 6

Section 3.5    Authorized Class A Membership Units ................................................... 7

Section 3.6    Class B Membership ................................................................................ 7

Section 3.7    Voting ...................................................................................................... 7

Section 3.8    Meetings of Members .............................................................................. 9

Section 3.9    Tax Matters Member............................................................................... 10

ARTICLE 4
CAPITALIZATION

Section 4.1    Initial Capital Contributions .................................................................. 10

Section 4.2    Additional Capital Contributions............................................................ 10

Section 4.3    Failure of a Class A Member to Make an Additional Capital Contribution ............ 11

Section 4.4    Capital Shortfall Loans ........................................................................... 11

Section 4.5    Supplemental Interest and Costs.............................................................. 11

Section 4.6    Capital Accounts...................................................................................... 11

Section 4.7    Manager's Modification of Capital Accounts.......................................... 12

Section 4.8    Return of Contributions .......................................................................... 12

Section 4.9    Conventions for Calculating Capital Contribution Returns..................... 12

ARTICLE 5
PROFITS AND LOSSES; DISTRIBUTIONS

Section 5.1    Tax Status, Reports and Allocations ....................................................... 13

Section 5.2    Certain Gross Asset Value/Tax Differences ........................................... 14

Table of Contents

Page

Section 5.3    Minimum Gain and Income Offsets ........................................................ 14

Section 5.4    Net Cash from Operations and Net Capital Proceeds ............................. 17

Section 5.5    Allocations ............................................................................................. 17

Section 5.6    Tax Allocations: Code Section 704(c) .................................................... 18

Section 5.7    Distributions to Members ....................................................................... 18

Section 5.8    Adjustments Among Paying and Non-Paying Members........................... 20

Section 5.9    Changes in Membership Interests ........................................................... 20

Section 5.10   Persons Entitled to Distributions ............................................................ 20

### ARTICLE 6
### ACCOUNTING, RECORDS AND REPORTS

Section 6.1    Fiscal Year ............................................................................................. 20

Section 6.2    Accounting ............................................................................................. 20

Section 6.3    Company Books ...................................................................................... 21

Section 6.4    Reports to Members ............................................................................... 21

Section 6.5    Capital Accounts .................................................................................... 21

Section 6.6    Bank Accounts ....................................................................................... 21

Section 6.7    Title to Property ..................................................................................... 21

### ARTICLE 7
### BUSINESS OPERATIONS AND MANAGEMENT

Section 7.1    Management ............................................................................................ 21

Section 7.2    Manager.................................................................................................. 22

Section 7.3    Steering Committee ................................................................................ 22

Section 7.4    Delivery of Annual Reports..................................................................... 23

Section 7.5    Company Budget..................................................................................... 23

Section 7.6    Management Fee ..................................................................................... 24

Section 7.7    Compensation and Fees .......................................................................... 24

Section 7.8    Time Devoted to Business; Independent Activities................................... 24

Section 7.9    Limits on Powers .................................................................................... 25

Section 7.10   Class B Member Obligations................................................................... 25

Section 7.11   Limited Role of Members........................................................................ 26

Table of Contents

Page

| | | |
|---|---|---|
| Section 7.12 | Transactions With Interested Parties | 27 |
| Section 7.13 | Real Estate Brokerage Commissions | 27 |

ARTICLE 8
TRANSFERS OF MEMBERSHIP INTERESTS

| | | |
|---|---|---|
| Section 8.1 | Restrictions | 27 |
| Section 8.2 | Sale to a Non-Member | 27 |
| Section 8.3 | Transferees; Charging Orders | 28 |
| Section 8.4 | Distributions and Allocations with respect to Transferred Membership Interest | 29 |
| Section 8.5 | Taxpayer Information | 29 |
| Section 8.6 | Admission of Additional Members | 29 |
| Section 8.7 | Revocable Trust and Other Estate Planning Entities | 30 |
| Section 8.8 | Restrictive Legend | 30 |

ARTICLE 9
TERM AND TERMINATION

| | | |
|---|---|---|
| Section 9.1 | Duration | 30 |
| Section 9.2 | Dissolution of Company | 30 |
| Section 9.3 | Winding up of the Company | 30 |
| Section 9.4 | Termination of Company | 31 |

ARTICLE 10
REPRESENTATIONS AND WARRANTIES

| | | |
|---|---|---|
| Section 10.1 | Representations and Warranties | 31 |
| Section 10.2 | Restrictive Legend | 33 |

ARTICLE 11
MISCELLANEOUS

| | | |
|---|---|---|
| Section 11.1 | Governing Law | 34 |
| Section 11.2 | Amendments | 34 |
| Section 11.3 | Confidentiality | 34 |
| Section 11.4 | Defaults | 35 |
| Section 11.5 | Notices | 35 |
| Section 11.6 | Counsel to Company | 35 |

Table of Contents

Page

Section 11.7    Severability..................................................................................................... 35

Section 11.8    Entire Agreement ............................................................................................ 36

Section 11.9    Binding Effect ................................................................................................. 36

Section 11.10   Construction .................................................................................................... 36

Section 11.11   Time ................................................................................................................. 36

Section 11.12   Heading ............................................................................................................ 36

Section 11.13   Incorporation by Reference ............................................................................ 36

Section 11.14   Variation of Pronouns ..................................................................................... 36

Section 11.15   Waiver Of Action for Partition ....................................................................... 36

Section 11.16   Counterpart Execution ..................................................................................... 36

Section 11.17   Further Documents ........................................................................................... 36

Section 11.18   Attorneys' Fees ................................................................................................ 36

Section 11.19   Legal Representation ........................................................................................ 36

Section 11.20   Elections Made by Company ............................................................................ 37

Section 11.21   Dispute Resolution ........................................................................................... 37

THIS FULLY RESTATED AND AMENDED OPERATING AGREEMENT ("**Agreement**"), fully restates and amends the Operating Agreement dated as of the _____ day of _____, 2010, is made by and among the undersigned Manager and the Members initially designated in the Confirmation Order (as defined below).

WHEREAS, _____, LLC (the "**Company**") filed for protection under chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Code for the District of Nevada (the "**Bankruptcy Court**"); and

WHEREAS, the Bankruptcy Court confirmed a plan of reorganization for the Company pursuant to a final order duly entered in the Company's bankruptcy case (the "**Confirmation Order**"); and

WHEREAS, the Plan provides for and the Confirmation Order authorizes the Company to issue equity to the Members and to adopt this Operating Agreement; and

WHEREAS, the Members agree that, as provided in the Plan, this Operating Agreement is necessary and advisable to set out the agreement of the Members as to the conduct of business and the affairs of the Company, and desire to enter into such agreement, in form and content as set forth herein.

NOW, THEREFORE, the Members hereby agree as follows:

## ARTICLE 1
## FORMATION AND PURPOSE OF LIMITED LIABILITY COMPANY

Section 1.1    Formation of Limited Liability Company.  The Company shall be operated as a limited liability company pursuant to the provisions of Chapter 86 of the Nevada Revised Statutes ("**NRS**").  The rights and obligations of the Members in the operation of the Company as herein provided shall be conducted and construed in accordance with NRS Chapter 86.

Section 1.2    Effective Date.  The "**Effective Date**" of this Operating Agreement shall be the effective date of the Company's Plan of Reorganization as set forth in the Confirmation Order attached hereto as Exhibit "A".

Section 1.3    Articles of Organization.  The Articles of Organization for the Company have been or shall be filed in the Office of the Secretary of State of Nevada.  The Members further agree to acknowledge, file, record, and/or publish as necessary, such amendments to the Articles of Organization or to this Agreement as may be required by this Agreement or by law, and such other documents as may be appropriate to comply with the requirements of law for the formation, preservation, and/or operation of the Company.

Section 1.4    Name.  The Company's business shall be conducted solely under the name of _____, LLC or any fictitious name agreed upon by the Members, for which the appropriate certificate of fictitious name shall be filed with the appropriate government agency.

Section 1.5    <u>Office Where Records Are Maintained</u>.  The office and place of business of the Company, at which Company records must be maintained, is 3041 W. Horizon Ridge Parkway Suite 155, Henderson, Nevada, 89052, or at such other place in the State of Nevada as the Manager shall from time to time determine.

Section 1.6    <u>Registered Agent; Registered Office</u>.    The name and address of the Company's registered agent for service of process in Nevada is _____ *[Clayton affiliate]* 3041 W. Horizon Ridge Parkway Suite 155, Henderson, Nevada, 89052.  The foregoing address shall be the Company's registered office in the State of Nevada.  The Manager may from time to time change the Company's registered agent for service of process and registered office.

Section 1.7    <u>Purpose</u>.

(a)    The purpose of the Company is to acquire the Property, to own, hold for investment, finance, operate, and manage the Property, to sell the Property, and to exercise all of the rights and perform all of the obligations that relate to such activities all in substantial accordance with the Business Plan, and to engage in such other activities directly related to the foregoing business as may be necessary, advisable or appropriate.

(b)    It is the intent of all Members that the Company shall be taxed as a partnership, and the Company shall not enter into any business activity, take any action, or fail to take any required action, that would jeopardize taxation of the Company as a partnership.

## ARTICLE 2
## DEFINITIONS

The following words and phrases used in this Agreement shall have the following meanings:

Section 2.1    <u>Affiliate</u>.  "**Affiliate**" shall mean with respect to any person:  (a) any person directly or indirectly controlling, controlled by, or under common control with such person; (b) any officer, director, general partner, member, or trustee of such person; or (c) any person who is an officer, director, general partner, member, or trustee of any person described in clause (a) or (b) of this sentence.  For purposes of this definition, the terms "controlling," "controlled by," and "under common control with" shall mean the possession, whether direct or indirect, of the power to direct or cause the direction of the management and policies of a person or entity, whether through the ownership of voting securities, by contract, or otherwise, or the power to elect at least fifty percent (50%) of the directors, managers, members, or persons exercising similar authority with respect to such persons or entities.

Section 2.2    <u>Articles of Organization</u>.    "**Articles of Organization**" shall mean the articles of organization filed with the Secretary of State to form the Company pursuant to NRS § 86.151.

Section 2.3    <u>Business Plan</u>.  "**Business Plan**" shall mean the proposed annual plan of the Company with respect to the ownership, preservation, operation, management, leasing and disposition of the Property, including an anticipated schedule for the critical milestones and any Work to be performed by the Class B Member to preserve and/or enhance the value of the

Property, as the same may be amended from time to time in accordance with this Agreement.  A copy of the initial Business Plan is attached hereto as Exhibit "D" which covers the period from the Effective Date through December 31, 2011.

Section 2.4    Capital Contribution.  **"Capital Contribution"** means a capital contribution made by a Member to the Company in accordance with Article 4 hereof.  Any Capital Contribution of property other than cash shall be taken into account at the Gross Asset Value of such property reduced by the amount of liabilities assumed by the Company (or to which the Company takes subject) with respect to such contribution, from time to time.

Section 2.5    Carry Costs.  **"Carry Costs"** shall mean the ongoing costs of the Company and of maintaining the Property including, without limitation, real estate taxes, insurance premiums, accounting and legal costs, the fee due to Manager pursuant to Section 7.5 and the cost of any permits, licenses or other governmental fees or impositions, together with the out of pocket costs incurred by the Manager in the performance of its duties hereunder.

Section 2.6    Code.  **"Code"** shall mean the Internal Revenue Code of 1986, as amended from time to time (or any corresponding provisions of succeeding law).

Section 2.7    Company Conditions.  **"Company Conditions"** shall mean each of the following conditions:  (a) the issuance of the Confirmation Order approving the Company's Plan of Reorganization and the requisite appeal period has passed (a copy of which shall be attached hereto as Exhibit "A"), (b) the transfer of the Property to the Company, free and clear of all liens and encumbrances other than the security documents evidencing the Note to Prior Owner (each such capitalized term is defined in Article 2), (c) the payment by the  Class B Member of the Class B Member Upfront Payment, and (d) the payment and/or reimbursement by the Class B Member of all attorney fees, costs and expenses incurred by Clayton in connection with this Agreement and the Company's Plan of Reorganization.

Section 2.8    Company Property.  **"Company Property"** shall mean the Property and any other asset at any time owned by the Company.

Section 2.9    Class B Member Obligations.  **"Class B Member Obligations"** shall mean the obligations of the Class B Member as set forth in Section 7.9 hereof.

Section 2.10    Class B Member Upfront Payment.  **"Class B Member Upfront Payment"** shall mean cash in the amount of $_____ due from the Class B Member and paid to the Company.  The Members expressly agree that $_____ of the Class B Member Upfront Payment shall constitute the Class B Member's initial capital contribution ("**Class B Member's Initial Contribution**") due from the Class B Member pursuant to Section 4.1(b), and that except for the Class B Member's Initial Contribution no part of the Class B Member Upfront Payment shall (a) constitute any part of the Class B Member's Initial Capital Contribution, Capital Contribution, Additional Member Contribution, Supplemental Capital Contribution or any other Contribution by the Class B Member hereunder; or (b) constitute a loan by the Class B Member to the Company hereunder.

The Class B Member Upfront Payment is in an amount reasonably determined by the Class B Member and the Manger to pay certain costs relating to the Company Property from October 31,